The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
8                   AT SEATTLE

9    DAVIS WRIGHT TREMAINE LLP,

10                    Plaintiff,                    No. 2:19-cv-334-RSM

11          v.                                      PLAINTIFF'S MOTION FOR
                                                    SUMMARY JUDGMENT
12   UNITED STATES CUSTOMS AND BORDER
     PROTECTION,                                    NOTED FOR HEARING:
13                                                  MARCH 20, 2020
                      Defendant.
14                                                  ORAL ARGUMENT REQUESTED

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................. **ERROR! BOOKMARK NOT DEFINED.**

I.    BACKGROUND................................................................................................. 2

    A.    The Immigration and Nationality Act Provision on "Drug Traffickers".............. 2

    B.    Newspapers Report CBP's New Policy ............................................................. 3

    C.    Davis Wright Tremaine's Representation of the Cannabis Industry................... 4

    D.    DWT Requests Documents Relating to CBP's New Policy, and CBP
        Ignores the Requests........................................................................................ 5

    E.    CBP Continues to Delay After Being Sued ....................................................... 5

II.   LEGAL STANDARD ......................................................................................... 8

III.  ARGUMENT ...................................................................................................... 9

    A.    CBP Ignored FOIA's Most Basic Requirements.............................................. 11

    B.    CBP Withheld and Redacted Responsive, Non-Exempt Information............... 14

        1.    CBP Withheld Responsive Policy Documents....................................... 15

        2.    Names of Agency Officials Are Not Private Information...................... 19

        3.    CBP's Interpretation and Application of the INA Is Not a Law
            Enforcement Technique or Procedure, nor a Guideline for
            Investigations....................................................................................... 20

    C.    *In Camera* Review of CBP's Productions Is Appropriate................................. 22

    D.    Davis Wright Tremaine is Entitled to its Reasonable Attorney Fees................ 23

IV.   CONCLUSION ................................................................................................. 23

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page i
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Civ. Liberties Union of N. Cal. v. U.S. Dep't of Justice*,
　　880 F.3d 473 (9th Cir. 2018)...............................................................16, 17, 20

*Assembly of Cal. v. U.S. Dep't of Commerce*,
　　968 F.2d 916 (9th Cir. 1992)............................................................................17

*Cottone v. Reno*,
　　193 F.3d 550 (D.C. Cir. 1999)..........................................................................18

*Dep't of Air Force v. Rose*,
　　425 U.S. 352 (1976) .............................................................................12, 13, 15

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
　　532 U.S. 1 (2001) ..............................................................................................16

*Dobronski v. F.C.C.*,
　　17 F.3d 275 (9th Cir. 1994)..............................................................................15

*Hamdan v. U. S. Dep't of Justice*,
　　797 F.3d 759 (9th Cir. 2015)............................................................................20

*Hardy v. U.S. Dep't of Def.*,
　　2001 WL 34354945 (D. Ariz. Aug. 27, 2001) .................................................20

*High Tech Gays v. Defense Indus. Sec. Clearance Office*,
　　895 F.2d 563 (9th Cir. 1990).............................................................................8

*Int'l Bhd. of Elec. Workers, Local 41 v. Dep't of Hous. & Urban Dev.*,
　　763 F.2d 435 (D.C. Cir. 1985)..........................................................................12

*Lam Lek Chong v. Drug Enf't Admin*,
　　929 F.2d 729 (D.C. Cir. 1991)..........................................................................22

*Lissner v. U.S. Customs Serv.*,
　　241 F.3d 1220 (9th Cir. 2001) ..........................................................................19

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*,
　　108 F.3d 1089 (9th Cir. 1997)......................................................................16, 17

*Nat'l Res. Def. Council v. U.S. Dep't of Def.*,
　　388 F. Supp. 2d 1086 (C.D. Cal. 2005)............................................................18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*NLRB v. Robbins Tire*,
    437 U.S. 214 (1978) ..............................................................................8, 22

*Pac. Fisheries v. United States*,
    539 F.3d 1143 (9th Cir. 2008) ...........................................................18

*Quinon v. F.B.I.*,
    86 F.3d 1222 (D.C. Cir. 1996)............................................................22

*Rosenfeld v. U.S. Dep't of Justice*,
    57 F.3d 803 (9th Cir. 1995) ................................................................20

*Spirko v. Postal Serv.*,
    147 F.3d 992 (D.C. Cir. 1998)..............................................................9

*T.W. Elec. Serv. v. Pac. Elec. Contractor*,
    809 F.2d 626 (9th Cir. 1987) ................................................................8

*United States Dep't of State v. Ray*,
    502 U.S. 164 (1991) ...........................................................................15

*Weiner v. FBI*,
    943 F.2d 972 (9th Cir. 1991) ................................................................9

**Federal Statutes**

5 U.S.C. § 551 *et seq.* ..............................................................................21

5 U.S.C. § 552(a)(1) ..................................................................................9

5 U.S.C. § 552(a)(2) ..................................................................................9

5 U.S.C. § 552(a)(3)(A) ...........................................................................14

5 U.S.C. § 552(a)(3)(C) .................................................................9, 10, 12

5 U.S.C. § 552(a)(3)(E) ...........................................................................14

5 U.S.C. § 552(a)(4) ................................................................................10

5 U.S.C. § 552(a)(4)(B) .......................................................................8, 22

5 U.S.C. § 552(a)(6)(B)(i) .........................................................................9

5 U.S.C. § 552(a)(6)(C)(i) .........................................................................8

5 U.S.C. § 552(a)(8)(i) ......................................................................10, 13

5 U.S.C. § 552(b) ..............................................................................14, 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

5 U.S.C. § 552(b)(5) ................................................................................14, 16

5 U.S.C. § 552(b)(6) ................................................................................15, 19

5 U.S.C. § 552(b)(6)(A) ...............................................................................9, 12

5 U.S.C. § 552(b)(7) .......................................................................................15

5 U.S.C. § 552(b)(7)(C) .................................................................................19

5 U.S.C. § 552(b)(7)(E) ............................................................................20, 21

**Rules**

Fed. R. Civ. P. 26(b)(3) ..................................................................................17

Fed. R. Civ. P. 56 ..........................................................................................23

Fed. R. Civ. P. 56(c) ........................................................................................8

**Other Authorities**

Nina Shapiro, *Blaine lawyer: CBP memo appears to order border stops of
    Iranian Americans, others from Middle East*, Seattle Times (Jan 30, 2020)
    https://www.seattletimes.com/seattle-news/blaine-lawyer-cbp-memo-
    appears-to-order-border-stops-of-iranian-americans-other-middle-easterners/ ...................13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    Plaintiff Davis Wright Tremaine LLP brings this motion for summary judgment
2    requesting the Court order the United States Customs and Border Protection to comply with its
3    obligations to search for and produce all non-exempt documents in response to two Freedom of
4    Information Act requests. The requests seek records related to the agency's new and largely
5    secretive policy of issuing life-time bans on entering the United States to foreigners who work
6    in the legal cannabis industry here and abroad.

7    In 2018, Davis Wright Tremaine ("DWT") learned from newspaper articles that
8    Customs and Border Protection ("CBP") was implementing a new policy based on CBP's
9    interpretation of the Immigration and Nationality Act ("INA"). The INA prohibits foreign
10    nationals who are "drug traffickers" from entering the United States. Close to Canada's
11    national legalization of cannabis, and as more states in the United States began to legalize
12    cannabis, CBP apparently developed and implemented a new interpretation of the "drug
13    trafficker" provision in the INA.

14    Under its new policy, CBP deemed foreign nationals who worked in or with the legal
15    cannabis industry in Canada or the United States to be "drug traffickers," and issue them life-
16    time bans on entering the U.S. But CBP never engaged in public-rule making for its new
17    policy, never announced its new interpretation of the law, and gave no other way for foreign
18    nationals to *know* the new legal standard CBP was using.

19    DWT made two Freedom of Information Act ("FOIA") requests to CBP and CBP's
20    Seattle Field Office, seeking documents related to CBP's new policy. For months after
21    receiving the requests, CBP did nothing, and only after DWT filed this suit did CBP begin to
22    search for and produce responsive documents. But CBP's efforts have been minimal. The
23    agency has not conducted adequate searches for responsive documents, has not located or
24    produced all responsive documents, and has withheld or redacted the few responsive records it
25    has located. In effect, CBP has implemented a new policy, and is now refusing to disclose what
26    that policy is, how it was developed, and how it is being applied.

27

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 1
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    CBP's actions violate FOIA, and DWT now asks the Court to order CBP to search for

2    and produce all records responsive to DWT's requests and to certify that it has done so. DWT

3    further asks that the Court do an *in camera* review of any documents CBP withholds or redacts

4    to determine whether a sufficient basis for non-disclosure exists.

## I.    BACKGROUND

6    This lawsuit grew out of a new policy that CBP appears to have developed in 2018,

7    apparently in response to the growth of the legal cannabis industry in Canada and the United

8    States. In mid-2018, DWT learned from newspaper articles that CBP was screening foreign

9    nationals at ports of entry to the United States to determine if they had business connections to

10   the legal cannabis industry in the United States and Canada, and perhaps other countries. CBP

11   was using a new interpretation of the INA to determine that foreign nationals with such a

12   connection were "drug traffickers" and permanently ineligible to enter the United States.

13   In an effort to learn more about CBP's policy, DWT made two Freedom of Information

14   Act ("FOIA") requests to CBP in September, 2018. After CBP did not respond to those

15   requests, DWT filed this suit against the agency seeking documents responsive to its requests.

16   **A.    The Immigration and Nationality Act Provision on "Drug Traffickers"**

17   The Immigration and Nationality Act ("INA") sets out the requirements for non-citizens

18   of the United States (referred to in the INA as "aliens") to be admitted to this country. CBP's

19   policy—and this case—relate to the portions of the section dealing with drug trafficking. An

20   alien is inadmissible if "the consular officer or the Attorney General knows or has reason to

21   believe" that the alien:

22           (i) is or has been an illicit trafficker in any controlled substance or
             in any listed chemical (as defined in section 802 of title 21), or is
23           or has been a knowing aider, abettor, assister, conspirator, or
             colluder with others in the illicit trafficking in any such controlled
24           or listed substance or chemical, or endeavored to do so; or

25           (ii) is the spouse, son, or daughter of an alien inadmissible under
             clause (i), has, within the previous 5 years, obtained any financial
26           or other benefit from the illicit activity of that alien, and knew or
             reasonably should have known that the financial or other benefit
27           was the product of such illicit activity[.]

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    *Id.* § 1182(a)(2)(C).

2    **B.      Newspapers Report CBP's New Policy**

3            On July 5, 2018, Toronto's The Star newspaper reported that CBP was implementing a

4    new policy towards the Canadian legal cannabis industry: CBP had determined Canadians who

5    were merely "involved with the cannabis economy" were inadmissible to enter the United

6    States "because they are considered to be living off the profits of the drug trade." Morley

7    Decl. ¶ 7.

8            The Star article indicated that by April, 2018, CBP had implemented a new policy or

9    rule based on an expansive interpretation of the INA's drug trafficking provision. *See* Morley

10   Decl. Ex. 1. CBP already had used that interpretation to issue lifetime bans to the CEO and two

11   engineers of a Canadian agricultural equipment manufacturer who were traveling to the U.S.

12   "to meet with an American company to begin design work on a new machine that would

13   streamline labour costs for cannabis producers." *Id.* "We had not yet designed the product, we

14   had not yet marketed the product and we'd not yet sold the product," one of the Canadians said,

15   but CBP found that the three were "drug traffickers," and all three were banned for life from

16   entering the U.S. *Id.*

17           On September 13, 2018, Politico reported an interview with Todd Owens, CBP's

18   executive assistant commissioner for the Office of Field Operations, about CBP's new policy.

19   Morley Decl. ¶ 8. Mr. Owens "gave POLITICO a detailed preview of how CBP will apply

20   longstanding rules" on drug trafficking to the legal cannabis industry. Morley Decl. Ex. 2.

21           Under CBP's new policy, any foreign national with even a cursory interest in the

22   cannabis industry is a drug trafficker and inadmissible to enter the United States. "'If you work

23   for the industry, that is grounds for inadmissibility,' Owen said. 'Likewise, investors in

24   marijuana companies are considered inadmissible. We don't recognize that as a legal

25   business.'" *Id.*

26           Mr. Owen admitted that CBP already had banned other foreign nationals because they

27   engaged in some business with the Canadian or U.S. cannabis industries: "[M]arijuana

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 3
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

investors from other countries, such as Israel, have been denied entry into the U.S." *Id.* Mr. Owen also indicated that CBP's new policy was not limited to a single border crossing or regional office and would continue, stating that Canada's federal legalization of cannabis— which went into effect in October 2018—"could lead to more frequent secondary inspections at ports of entry." *Id.*

The articles revealed that CBP had responded to the impending federal legalization of cannabis in Canada, and the growing state legalization of cannabis in the U.S., by developing a new policy—a new interpretation of the INA's "drug trafficking" provision—and was using it to ban foreign nationals who had no notice of the policy, and no way to understand its reach.

## C.   Davis Wright Tremaine's Representation of the Cannabis Industry

DWT is a national business and litigation law firm headquartered in Seattle and with offices across the United States. The firm's cannabis practice group serves clients in the legal cannabis industry in the United States, Canada, and elsewhere. Morley Decl. ¶ 2.

DWT's clients include businesses which participate directly in the cannabis industry (e.g., growing, selling, distributing), and those which participate indirectly, by selling goods or services to the cannabis industry, investing in cannabis-related businesses, and so on. *Id.* ¶ 3. Many of these clients are based in the United States, but employ or are managed by foreign nationals, who periodically travel out of and back into the United States. Others are based abroad, and employ foreign nationals who travel to the United States for work or personal reasons. *Id.* ¶ 4. For any foreign national working in or for the cannabis industry, CBP's new policy made travelling to the United States quite risky.

DWT lawyers are also proud of the firm's tradition of upholding First Amendment freedoms and government accountability. DWT frequently litigates Freedom of Information Act matters on behalf of its clients and the public's right to scrutinize their government's actions, but is not litigating this matter on behalf of or at the request of any client. *Id.* ¶ 5. Neither DWT as a firm nor any of the lawyers representing DWT in this matter have any personal or professional financial interest in the outcome of this case. *Id.* ¶ 6.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 4
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

D.    **DWT Requests Documents Relating to CBP's New Policy, and CBP Ignores the Requests**

On September 27, 2018, DWT submitted two FOIA requests—one to CBP's main office in the District of Columbia, and one to CBP's Seattle Field Office—seeking documents relating to the agency's new policy. *Id*. ¶¶ 9 & 10; Dkt. 1. Both requests sought records related to the Seattle Field Office's policy or practice of finding foreign nationals associated with the legal cannabis industry to be "drug traffickers" and therefore permanently ineligible to enter the United States. Morley Decl. ¶ 9. The request to CBP's main office also sought similar documents issued by the agency as a whole, documents relating to CBP's policies or practices as described by Mr. Owen in his interview with Politico, and any guidance documents on these topics issued to CBP field offices, field office supervisors, or agents. *Id.*

CBP's Seattle Field Office received the request the following day, September 28. CBP's main office, in Capitol Heights, Maryland, received the other request the following Monday, October 1. *Id*. ¶¶ 10 & 11.

By all appearances, CBP took no action on either request for the next five months. *See id*. ¶¶ 12 & 13. On March 6, 2019, DWT filed this action. Dkt. 1.

E.    **CBP Continues to Delay After Being Sued**

After being sued, CBP indicated that it was willing to provide responsive documents, but has continued to delay and resist its statutory obligations. When it has produced documents, CBP has grossly overused FOIA's narrow exemptions to avoid disclosing its new policy.

On May 8, CBP produced three documents: a publicly available January 4, 2018 Memorandum by then-Attorney General Jeff Sessions regarding the Department of Justice's policy to the state-legal cannabis industry in the United States; an undated one-page document purportedly from the Enforcement Programs Division with the topic "Marijuana Legalization in Canada"; and a heavily redacted document titled *CBP Information Guide - Legalization of Marijuana in Canada* ("*CBP Info. Guide*"). Morley Decl. ¶ 16.

CBP subsequently revealed that it had not searched email records at all, and searched for other electronic documents using only four loosely-crafted search terms: "Legalization of

Marijuana"; "Canada Legalization of Marijuana"; "Canada MJ"; and "MJ." *Id.* ¶ 17. DWT requested that CBP conduct a more thorough search, and suggested that CBP identify employees likely to have responsive documents and use more robust search terms.

By May 21, when CBP had still not proposed additional search terms, DWT provided a list of more tailored search terms. *Id.* ¶ 18. On June 19—more than one month later—CBP responded that the search terms would not work for "technical reasons" and asked DWT to suggest revisions. *Id.* ¶ 21. CBP did not propose search terms of its own. *See id.*

On June 25, CBP produced eight documents, including the three it already had produced, and again rejected DWT's proposed search terms, this time on the basis that they had produced too many results in email searches. *Id.* ¶ 22. CBP again did not propose alternate terms or a different search protocol.

By July 12, CBP had still not proposed a reasonable search protocol to identify responsive email records. *Id.* ¶ 24. Without waiving its right to seek production of all responsive documents, DWT agreed with CBP that the agency's time might be better spent on "the collection and production of all responsive guidelines, policies, trainings, and similar documents" and resolving the parties disagreement over CBP's extensive redactions. *Id.* To facilitate a useful discussion about those redactions, DWT requested that CBP provide a privilege log or Vaughn index, briefly setting out the basis for each redaction. *Id.*

On Friday, July 19, CBP stated that it would provide a Vaughn index the following week. It did not. *Id.* ¶ 26. On Friday, July 26, CBP stated that it would "try" to produce a Vaughn index the next week, but—again—it did not. *Id.* ¶ 27. Instead, on Wednesday, July 31, CBP suggested that it would not produce a Vaughn index, claiming that it could not simultaneously produce an index of its redactions and discuss with DWT whether those redactions were justified. *Id.* ¶ 28. Finally, on Monday, August 12, CBP provided a draft index of withheld and redacted documents. *Id.* ¶ 29; Morley Decl. Ex. 20.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

On September 18, CBP produced five emails it had found through supplemental searches. Morley Decl. ¶ 31. As with previous productions, CBP had redacted from these emails the names of agency officials, including all names in the "to," "from," and "cc" fields. CBP went so far as to redact from the email signatures and names of high-ranking agency officials, but leaving in place their titles:

(b) (6), (b) (7)(C)
Executive Director, Operations
Office of Field Operations
U.S. Customs and Border Protection
(b) (6), (b) (7)(C) (Office)
(Cell)

(b) (6), (b) (7)(C)
Director, Enforcement Programs Division
U.S. Customs and Border Protection
Office of Field Operations
Washington, D.C.

O: (b) (6), (b) (7)(C)
M:

Morley Decl. Ex. 21 at 1, 3.

On October 23, CBP produced a complete set of all thirteen documents it considered responsive to DWT's requests. Morley Decl. ¶ 33. To date, CBP's entire production consists of thirteen documents, eight of which have some redactions. These redactions fall into two broad categories:

- Agency officials' names, redacted on the basis that they are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" or are "records or information compiled for law enforcement purposes . . . [the disclosure of which] could reasonably be expected to constitute an unwarranted invasion of personal privacy."

- Information which CBP redacted on the basis that it was "compiled for law enforcement purposes" and its disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." This includes, for example, the topic of an upcoming conference call (*see* Morley

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 7
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Decl. Ex. 21 at 2), and entire paragraphs of guidance documents that appear, in context, to set out the basis for CBP's policy towards foreign nationals involved in the legal cannabis industry (*see* Morley Decl. Ex. 35).

Morley Decl. ¶ 33.

The parties have tried and failed to resolve their disagreements over the completeness of CBP's production. DWT now brings this motion seeking the Court's assistance.

## II.    LEGAL STANDARD

A FOIA plaintiff may move for summary judgment twenty days after service of the complaint has been accomplished if the agency has failed to respond. *See* 5 U.S.C. § 552(a)(6)(C)(i) (failure of agency to respond to request within 20 days constitutes plaintiff's exhaustion of administrative remedies).

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 570 (9th Cir. 1990). The plaintiff's initial burden of production can be satisfied by "submitting affirmative evidence that negates an essential element of the nonmoving party's claim or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *High Tech Gays,* 895 F.2d at 574 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)). Once the plaintiff submits such evidence, the burden shifts to the defendant to offer "*specific facts* showing that there is a genuine issue for trial." *T.W. Elec. Serv. v. Pac. Elec. Contractor*, 809 F.2d 626, 630 (9th Cir. 1987) (emphasis by the court).

Judicial review of an agency's withholding under FOIA is *de novo*. 5 U.S.C. § 552(a)(4)(B). The trial court has broad discretion to review requested documents *in camera* to test government claims of exemption. *See NLRB v. Robbins Tire*, 437 U.S. 214, 224 (1978). In the Ninth Circuit, *in camera* inspection is appropriate once "the government has submitted as

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 8
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

detailed public affidavits and testimony as possible." *Weiner v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) (citation omitted). *In camera* inspection may be particularly appropriate when the number of withheld documents is relatively small and "when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents." *Spirko v. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998).

### III.   ARGUMENT

The Freedom of Information Act provides a simple and easy way for us to supervise our government. Agencies are required to make available to the public certain routine and common information, such as descriptions of the agency and its offices, the agency's rules and procedures, and its statements of policy and legal interpretations. 5 U.S.C. § 552(a)(1) & (a)(2). In addition to this routine information, FOIA empowers "any person" to ask federal agencies to produce other records. So long as the request reasonably describes the records sought and follows straightforward rules, the agency is *required* to respond. An agency's obligations to respond to a FOIA request are—predictably and properly—greater than those on the person making the request. For example:

- The agency must determine whether and how to respond to the request within 20 days and immediately notify the requester whether it intends to produce records, withhold records, or requires more time. *Id.* § 552(b)(6)(A);

- Although an agency can notify the requester that it requires more time to respond, it can only do so in "unusual circumstances." The agency must make that determination within the 20-day period and "immediately" provide written notice to the requester "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i);

- The agency must "make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." *Id.* § 552(a)(3)(C);

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 9
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

- The agency may charge fees associated with the processing of FOIA requests, but those fees must be reasonable, must be waived or discounted if disclosure of the records is in the public interest, and must be waived if the agency fails to respond to the request within the mandated 20 days. *Id.* § 552(a)(4);

- The agency may withhold information from the requestor only if disclosure of the information is prohibited by law, or the agency "reasonably foresees that disclosure would harm an interest protected by" one of nine exemptions listed in the statute. *Id.* § 552(a)(8)(i).

FOIA also empowers a person to seek assistance from the federal courts when an agency does not meet its statutory obligations. The court may review in chambers documents the agency withheld or redacted, and the agency has the burden of showing that one of the statutory exemptions to disclosure applies. *Id.*

Here, DWT submitted two requests which reasonably described the records sought and was otherwise consistent with FOIA, but CBP's responses have fallen consistently short of the agency's statutory obligations. CBP failed to respond to the requests within 20 days, either to seek an extension or otherwise. In fact, CBP did not respond in any way to DWT's requests until DWT filed this lawsuit—more than five months after CBP received the requests.

When CBP did respond, it did not explain that "unusual circumstances" had caused the significant delay. Instead, CBP stated that the agency had lost one of the requests after it had been delivered by the carrier and received by CBP, and that the agency's delay in responding was due to the significant volume of FOIA requests it receives. Morley Decl. ¶ 14. Nor did CBP "make reasonable efforts to search for the records in electronic form." 5 U.S.C. § 552(a)(3)(C). Instead, CBP insisted that the records were hard to locate and asked DWT to develop search terms to identify responsive records in CBP's custody—difficult considering DWT had seen none of the records and is unfamiliar with CBP's electronic filing, agency jargon, responsible individuals, and other specifics which inform search parameters.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 10
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Of the records CBP has produced, the agency has failed to adequately explain the basis for the redactions it has applied. Many of these redactions—such as redacting a government official's name and title, or descriptions of case law applicable to border screenings—are plainly inconsistent with the purported exemption. *See* Morley Decl. Ex's 35 & 36. Other redactions are less clear, but surrounding context suggests the claimed exemption is inapplicable and, when asked by DWT, CBP has not provided compelling justification for the exemption.

In short, CBP has consistently and repeatedly failed to abide by its obligations under FOIA. CBP initially failed to comply with the most basic requirement of a timely response to the requests, then avoided its obligation to search for and produce responsive records, and then withheld and redacted documents beyond what is permitted by FOIA exemptions. DWT has been forced to expend significant resources in pursuit of these records.

DWT requests the Court order CBP to produce all records responsive to the requests, including policy, guidance, and training records. DWT further asks that the Court conduct an in chambers review of the documents CBP has withheld and redacted, and any new documents CBP proposes to withhold or redact, to ensure that CBP can meet its burden of proving the applicability of a statutory exemption. DWT further requests that the Court award against CBP DWT's attorney fees and other litigation costs incurred in obtaining these records.

## A.   CBP Ignored FOIA's Most Basic Requirements

CBP's response to DWT's FOIA requests has been dilatory, reluctant, and incomplete. Instead of responding to the requests within twenty days, CBP ignored the requests for over five months, until DWT brought this lawsuit. Instead of conducting a reasonable search for responsive documents, CBP repeatedly asked DWT to specify the documents it sought, craft search terms to identify responsive documents, and otherwise shift the agency's burden onto DWT. Instead of redacting only those portions of responsive documents that meet the exemptions in FOIA, CBP applied overbroad and unjustified redactions, withholding relevant, non-exempt information.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The purpose of FOIA is "to open agency action to the light of public scrutiny" and to "permit the public to decide for itself whether government action is proper." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976); *Int'l Bhd. of Elec. Workers, Local 41 v. Dep't of Hous. & Urban Dev.*, 763 F.2d 435, 436 (D.C. Cir. 1985). But those ideals are realized only if federal agencies actually abide by the obligations FOIA sets out. Here, CBP did not.

CBP violated its obligation to timely respond to FOIA requests by ignoring DWT's requests for several months. DWT sent the requests to CBP on Thursday, September 27, 2018. Morley Decl. ¶ 9. CBP received the requests on Friday, September 28 and Monday, October 1. *Id.* ¶¶ 10 & 11. CBP was required to respond no later than Monday, October 29. 5 U.S.C. § 552(b)(6)(A) (an agency is required to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) . . . whether to comply with" a request and immediately to notify the requester of its decision). But CBP did not respond by October 29. Morley Decl. ¶ 12. By all appearances, CBP took no action at all until DWT filed this action on March 6 of the following year. *Id.* ¶ 13. CBP's failure to comply within the time limits violated its statutory obligations, denied DWT access to the information it sought, and thwarted FOIA's purpose of increasing transparency and accountability for federal agencies.

After DWT filed this action, CBP violated its obligation to make reasonable efforts to search for and produce responsive documents by attempting to shift its burden to DWT. CBP was required to "make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C). Instead, CBP made minimal efforts to identify locations (such as email records) where responsive records might be, identify custodians, or craft effective search terms. When DWT objected that CBP's search efforts were unlikely to identify all responsive documents, CBP insisted that *DWT* identify custodians, craft search strings, or describe the types of documents it was seeking. *See* Morley Decl. ¶ 21.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 12
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Although CBP has now produced a small set of documents, many of those are redacted and others have been withheld for reasons far in excess of the narrow scope of FOIA's listed exemptions. *See* 5 U.S.C. § 552(a)(8)(i). These redactions are discussed in more detail below.

The produced documents also suggest the existence of other responsive documents which CBP did not locate in its searches. For example, the "Press Call" document CBP produced states that "CBP officers are thoroughly trained on admissibility factors and the Immigration and Nationality Act," (Morley Decl. Ex. 13) but CBP has produced only one document that arguably constitutes a "training" on these topics.[1]

The "Information Guide" CBP produced states that it was "developed in order to assist managers in the Field regarding Canada legalizing marijuana," and not as an official statement of CBP's policy. Morley Decl. Ex. 35 at 2. But the document contains many allusions to policies that—presumably—exist elsewhere and have not been produced. For example, the document advises field managers that "[f]or [the] purposes of making admissibility determination[s], there are not material distinctions between the various positions an individual may hold within a company" selling cannabis. *Id.* at 5. That is a sweeping pronouncement about the reach of the INA. It is exceedingly unlikely that CBP's policy has been made and recorded in an information guide for field managers and not, for example, in records that explicitly state the agency's position and the basis for it.

CBP's actions and inactions certainly violate specific and unambiguous statutory requirements in FOIA. If the purpose of FOIA is "to open agency action to the light of public scrutiny," CBP's actions here are inconsistent with both the letter and the spirit of the law. *Rose*, 425 U.S. at 372.

---

[1] CBP has just recently come under scrutiny for denying the existence of policies which later came to light. After CBP detained Iranian and Lebanese nationals entering the United States from Canada, CBP denied that the agency had issued any directive to field officers to target foreign nationals of those countries for additional screening. But the Seattle Times reported on a policy document apparently issued by the Seattle Field Office, which states that "updated procedures" require field officers to conduct additional vetting based on national origin. *See* Nina Shapiro, *Blaine lawyer: CBP memo appears to order border stops of Iranian Americans, others from Middle East*, Seattle Times (Jan 30, 2020) https://www.seattletimes.com/seattle-news/blaine-lawyer-cbp-memo-appears-to-order-border-stops-of-iranian-americans-other-middle-easterners/.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

There is no adequate remedy for the significant delays CBP has caused to date, but DWT would like to ensure that CBP has productions are at least complete, and include all responsive, non-exempt policy, guidance, and training documents. DWT therefore asks that the Court order CBP to conduct a reasonable search for responsive documents, produce all responsive, non-exempt documents, and certify that it has produced all documents showing CBP's policy.

**B.     CBP Withheld and Redacted Responsive, Non-Exempt Information**

CBP extensive and broad redactions are also inconsistent with FOIA's mandate for disclosure. CBP produced 13 documents in response to DWT's requests. CBP redacted information in eight of those and withheld two others. Although DWT cannot define what it has not seen, the context of the redactions strongly suggests that most of the redacted information is *not* exempt from disclosure, including information that appears directly relevant to DWT's requests.

Agency records are accessible to the public unless the records are specifically exempt. *See* 5 U.S.C. § 552(a)(3)(A). Records that an agency has already made publicly available to comply with other provisions in FOIA are exempt from disclosure requests, and FOIA prohibits an agency within the "intelligence community" from producing records to foreign governments. *Id.* § 552(a)(3)(A); (E). Otherwise, FOIA lists nine categories, or exemptions, to which the disclosure requirements do not apply. *Id.* § 552(b). CBP has made redactions or withheld documents under four of these exemptions:

- **Exemption (b)(5)[2]:** CBP withheld two documents, claiming that the documents are "deemed as drafts, and/or Attorney Work Product and Attorney-Client privileged."

---

[2] "[I]nter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

- **Exemptions (b)(6)[3] and (b)(7)(C)[4]:** In five documents, CBP redacted the names and email addresses of agency officials on the grounds that disclosure of this information would be an "unwarranted invasion of personal privacy."
- **Exemption (b)(7)(E)[5]:** In five documents, CBP redacted information that it claims constitutes law enforcement techniques, procedures, and guidelines.

Of course, DWT cannot tell whether withheld documents satisfy the statutory exemptions CBP has claimed. And DWT must, to some extent, guess at whether some of the redacted information meets the statutory requirements. But there is ample reason for the Court to review the withheld records and unredacted copies of redacted documents to determine if any exemption applies.

"[D]isclosure, not secrecy, is the dominant objective of" FOIA, and exemptions must be narrowly construed. *Rose*, 425 U.S. at 360; *see, e.g., Dobronski v. F.C.C.*, 17 F.3d 275, 277 (9th Cir. 1994). A federal agency bears the burden of showing that any redactions of requested documents are justified. *See, e.g., United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

CBP has not met this burden. CBP's redactions to and withholding of responsive documents appear to be far broader than the Act allows, and inconsistent with the Act's purpose of disclosure.

### 1.     CBP Withheld Responsive Policy Documents

Although CBP began to produce documents responsive to DWT's requests after this case began, it has withheld at least one responsive, non-exempt document.

---

[3] "[P]ersonnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id*. § 552(b)(6).
[4] "[R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id*. § 552(b)(7).
[5] "[R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id*.

CBP represents that its searches of agency records "produced a total of 47 pages of records responsive to the requests," of which CBP withheld two on the basis that the records are "deemed as drafts, and/or Attorney Work Product and Attorney-Client privileged" Morley Decl. Ex. 27 at 2. CBP describes one of these as a draft of a letter sent by CBP to Congressman Luis Correa. Morley Decl. Ex. 20 at 2. CBP produced the final copy of this letter to DWT, and DWT does not seek disclosure of the draft. The other document is listed in CBP's privilege log as a "Legal Memorandum regarding applicant [sic] for admission to United States pertaining to marijuana industry." *Id.* at 1. This document appears directly responsive to DWT's requests and outside the scope of the exemption at Section (b)(5).

Section (b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption allows the government to withhold records that are "normally privileged in the civil discovery context," such as "records that would be protected . . . by the attorney work-product, attorney-client, and deliberative process privileges." *American Civ. Liberties Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) ("ACLU") (quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)); *see Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Here, the withheld memorandum appears to satisfy the first condition: It is a memorandum from CBP's assistant chief counsel to CBP's Director of Field Operations in Seattle. It does not, however, fall within the "ambit of [] privilege against discovery under judicial standards that would govern litigation against" CBP. *Id.* But if the document sets out the policy CBP is implementing, based on the INA, the document would not be normally privileged in the civil discovery context. *ACLU*, 880 F.3d at 483.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 16
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The document does not appear to be attorney work product. "The attorney work-product privilege protects from discovery in litigation 'mental impressions, conclusions, opinions, or legal theories of a party's attorney' that were 'prepared in anticipation of litigation or for trial.'" *ACLU*, 880 F.3d at 483. Fed. R. Civ. P. 26(b)(3). A legal memorandum "regarding application for admission to United States pertaining to marijuana industry" does not meet that standard. CBP has not alleged that there was impending or anticipated litigation for which this memo was prepared. Instead, the document title suggests that it was prepared to communicate CBP's policies regarding the marijuana industry.

Although titled a "legal memorandum," and sent by CBP's counsel, the document does not appear to be privileged advice by CBP's counsel, but instead the transmittal of CBP's official policy. To be clear, DWT is not seeking the disclosure of legal advice about a specific case, or even legal strategies or arguments CBP's counsel have developed for future litigation. DWT is simply seeking the actual policies and interpretations that CBP agents apply at the border.

Nor is the document subject to the deliberative process privilege. "The deliberative process privilege protects the internal decision making processes of government agencies, including documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *ACLU*, 880 F.3d at 490 (internal quotation marks and citation omitted). "To fall within the 'deliberative process' privilege of exemption 5, the materials in question must be 'predecisional' in nature and must also form part of the agency's 'deliberative process.'" *Maricopa*, 108 F.3d at 1093 (quoting *Sears*, 421 U.S. at 151-52). A document is "predecisional" if it is "prepared in order to assist an agency decision-maker in arriving at his decision," such as "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (citation omitted).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 17
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

A document that is predecisional at the time it was prepared "can lose that status if it is adopted, formally or informally, as the agency position on an issue." *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1098 (C.D. Cal. 2005) (quotation marks and citation omitted). "Factual portions of documents covered by the deliberative process privilege must be segregated and disclosed unless they are 'so interwoven with the deliberative material that [they are] not [segregable].'" *Pac. Fisheries v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (citation omitted).

It is impossible for DWT to know for certain whether the document meets this standard, but circumstances suggest it does not. CBP certainly has a policy towards foreign nationals associated with the cannabis industry, and has been implementing that policy since at least April, 2018. *See* Morley Decl. Ex. 1. To the extent the withheld document reflects CBP's position on the issue of admissibility for foreign nationals "pertaining to the marijuana industry," it is no longer a "predecisional" document. That appears to be the case. The document is dated March 8, 2018. According to the Toronto Star, in April, 2018, CBP had implemented its policy and begun issuing life-time bans on entering the US to foreign nationals associated with the cannabis industry. *Id.* In October, 2018, CBP gave a press call at which it discussed the same policy. *See* Morley Decl. Ex. 13. Even if the document were "pre-decisional" at the time it was drafted, if it has been formally or informally adopted as CBP's position on the matters within, it is not protected by the deliberative process privilege.

Finally, no matter which privilege CBP claims over this document, it waived that privilege by discussing the contents of the memorandum in public. "[M]aterials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). CBP has made numerous public statements concerning the contents of this memorandum.

In September, 2018, Politico reported that a high-ranking CBP official—Todd Owen— "gave POLITICO a detailed preview of how CBP will apply longstanding rules." Morley Decl. Ex. 2. Mr. Owen's "detailed preview" included explicit statements of CBP's policies, such as

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 18
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

claiming that working for the legal cannabis industry was "grounds for admissibility," and describing CBP's position on cannabis investment: "We don't recognize that as a legal business." *Id.* CBP has formulated interpretations of the INA and policies based on those interpretations. By disclosing the existence of these interpretations and policies in public statements, CBP has waived the right to claim that the interpretations and policies should be protected from disclosure.

DWT asks the Court to order CBP to produce all responsive, non-exempt document showing CBP's policy and interpretation of the INA, including policy statements, guidance documents, trainings, and emails or other communications transmitting or communicating the policy, guidance, or training. To the extent CBP's new policy is based on, amends, or refers to other policies, trainings, or guidance documents—and those documents are necessary to understanding CBP's new policy—such documents would also be responsive to DWT's requests.

### 2. Names of Agency Officials Are Not Private Information

CBP redacted the names of agency officials in many of the documents it produced, claiming that the information was "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" (5 U.S.C. § 552(b)(6)) and "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

The names of government officials are not "personnel or medical files," nor were these emails "compiled for law enforcement purposes." The mere fact that CBP performs law enforcement functions does not mean that every record it produces is "compiled for law enforcement purposes," else this exemption would apply to all records the agency produces.

Disclosing government officials' names also does not violate their privacy. The privacy interests of public officials are weighed less than those of private individuals. *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (while public officials retain some privacy

interest, "by becoming public officials, their privacy interests are somewhat reduced"). This is especially true the higher the level of the public official. *See Hardy v. U.S. Dep't of Def.*, 2001 WL 34354945, at *9 (D. Ariz. Aug. 27, 2001) ("federal employees have a diminished privacy interest" that is further diminished when the employee "holds a high-level position"). If disclosure of a government employee's name, by itself, was a violation of that person's privacy, CBP would be guilty of the same sin: The names of many CBP officials—along with their photograph and biographical information—are publicly available on CBP's own website.

### 3. CBP's Interpretation and Application of the INA Is Not a Law Enforcement Technique or Procedure, nor a Guideline for Investigations

In many of the documents it has produced, CBP appears to have redacted information showing its interpretation of the INA or its policy based on the INA on the grounds that this information's disclosure risks circumvention of the law. 5 U.S.C. § 552(b)(7)(E).

Exemption (b)(7)(E) applies to information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id.* The exemption applies only when the material would reveal *unknown* techniques or procedures, such as a specific means or investigative technique. *ACLU*, 880 F.3d at 491. If a technique or procedure would be well-known to the public and "leap to the mind of the most simpleminded investigator." it may not be redacted. *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995) (quoting *Dunaway v. Webster*, 519 F. Supp. 1059, 1070 (N.D. Cal. 1981)); *Hamdan v. U. S. Dep't of Justice,* 797 F.3d 759, 778 (9th Cir. 2015). The exemption does not permit an agency to withhold documents showing its interpretation or application of the law. But the context of CBP's redactions indicate CBP has done just that.

CBP has extensively redacted portions of documents that appear to show not law enforcement "techniques" or "guidelines," but CBP's own *interpretation* of the INA. On page 4 of the document "CBP Information Guide Legalization of Marijuana in Canada", a paragraph

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

begins: "In establishing whether an alien is inadmissible for a violation of controlled substances laws, the [REDACTED]." Morley Decl. Ex. 37 at 6. The remainder of the paragraph is redacted. *Id.* On the following page, a clause of a sentence begins "the applicable legal standard is borad [sic] enough to render inadmissible aliens whom [REDACTED]." *Id.* at 7.

On the following page, CBP has redacted the "factors" CBP considers when determining whether an alien satisfies the INA. *Id.* at 8. The paragraph begins "Established through case law, each application [for admission] is reviewed through a weighing of at least three factors." *Id.* The factors are redacted. The following paragraph begins: "Additional factors evaluated by CBP are." *Id.* Those factors are also redacted. *Id.*

CBP is not protecting sensitive techniques, procedures, or guidelines it uses to enforce the law. It is hiding *what CBP interprets the law to mean*. A number of the redactions are of text explicitly preceded by references to case law or legal authority. These are not "procedures," "techniques," or "guidelines," they are CBP's own—and apparently secret—interpretations of the law. But an agency is not permitted to generate secret interpretations of the law. There are very specific procedures which an agency must follow when it interprets federal law, and those procedures are intended to ensure open and transparent rulemaking. *See, e.g.,* 5 USC § 551 *et seq.*

Disclosure of CBP's position as to the meaning of immigration law as it regards to legal cannabis industry in the United States and abroad does not identify a specific law enforcement technique or procedure or risk circumvention of the law. *See* 5 U.S.C. § 552(b)(7)(E). Rather than risk circumvention of the law, disclosure of these documents would instead *give notice of what the law is*, at least in the eyes of CBP. DWT requests that the Court review the unredacted documents to determine whether any of the redacted material properly fits within the scope of a statutory exemption.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## C.      *In Camera* Review of CBP's Productions Is Appropriate

Because CBP has used FOIA's exemptions so broadly, it is difficult to determine whether any specific redaction or withholding is appropriate. The Court's *in camera* review of responsive records would resolve that problem.

FOIA directs trial courts to review de novo the applicability of the particular exemptions cited by the agency to withhold documents. *Id.* § 552(a)(4)(B). The decision to conduct an *in camera* review is committed to the "broad discretion of the trial court judge." *Lam Lek Chong v. Drug Enf't Admin*, 929 F.2d 729, 735 (D.C. Cir. 1991) (quoting *Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987)); *see also Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) ("[t]he *in camera* review provision is discretionary by its terms"). Courts "have repeatedly noted that *in camera* review may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency." *Quinon v. F.B.I.*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (citing *Lam Lek Chong*, 929 F.2d at 735; *Carter*, 830 F.2d at 392–93; *Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986); *Lesar v. Dep't of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980); *cf. Allen v. Cent. Intelligence Agency*, 636 F.2d 1287, 1298 (D.C. Cir. 1980), *rev'd on other grounds, Founding Church of Scientology of Wash., D.C., Inc. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983)).

> "Another crude, albeit important, factor to be considered is the number of the withheld documents. *See Carter*, 830 F.2d at 393 ("when the requested documents 'are few in number and of short length,' *in camera* review may save time and money"). Finally, when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents, *in camera* review may be more appropriate. *See Carter*, 830 F.2d at 393."

*Quinon*, 86 F.3d at 1228.

Here, when CBP has produced only thirteen documents, withheld two, and claims there are no more responsive documents, *in camera* review would efficiently resolve whether any

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

specific exemption is appropriate. The broad approach that CBP has taken to redactions also weighs in favor of the Court's review. CBP has redacted high-level agency officials' names from documents on the grounds they are "sensitive personnel information." While those officials' names may not be the most important piece of information in this case, they do illustrate CBP's tendency to *over*-redact. CBP's redactions of discussions of case law, legal standards, and similar, likewise indicates that the agency may have been applying FOIA's exemptions in bad faith. DWT therefore requests that the Court conduct an *in camera* review of CBP's exemption claims.

**D.      Davis Wright Tremaine is Entitled to its Reasonable Attorney Fees**

DWT is entitled to its reasonable attorneys' fees and litigation costs for this matter. CBP's delays and failures to comply with FOIA requirements necessitated this action, many of the government's redactions have no reasonable basis in law, and the requested information goes to the core purpose of FOIA to expose agency actions to the light of public scrutiny.

If the Court finds in DWT's favor, DWT would be glad to more fully address the appropriateness of a fee award in this case, and the amount of its fees and costs.

## IV.      CONCLUSION

Under Fed. R. Civ. P. 56 and 5 U.S.C. § 552(b), CBP has the obligation of coming forward with evidence of specific facts showing that there is a genuine issue for trial and that their redactions of responsive documents are properly justified in accordance with FOIA. Upon review of the record, the Court should enter summary judgment for the Plaintiff and order CBP to produce the documents in question unredacted.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DATED this 3rd day of February, 2020.

Davis Wright Tremaine LLP

By ___*s/ John McKay*_____
John McKay, WSBA # 12935
Chris Morley, WSBA # 51918
Jordan Harris, WSBA # 55499
920 Fifth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: johnmckay@dwt.com
            chrismorley@dwt.com
            jordanharris@dwt.com
*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 24
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on this 3rd day of February 2020, I caused to be electronically filed

3  the foregoing with the Clerk of the Court using the CM/ECF system, which will send

4  notification of such filing to those attorneys of record registered on the CM/ECF system. All

5  other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

6

7          DATED this 3rd day of February, 2020.

8

9                                                                      _____

10                                                             Tammy Miller
                                                              Legal Assistant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – Page 25
Case No. 2:19-cv-334-RSM

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax