THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVIS WRIGHT TREMAINE LLP,

Plaintiff,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION,

Defendant.

Case No. 2:19-cv-334-RSM

DECLARATION OF PATRICK HOWARD

I, Patrick Howard, declare as follows:

1.      I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS).  I have been a Branch Chief in the FOIA Division since February 8, 2015.  In this capacity, I oversee a staff of Government Information Specialists (GIS), the processing of requests for records submitted to CBP pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.      I am familiar with CBP's procedures for responding to FOIA requests.  I provide technical and administrative supervision and direction to a group of FOIA specialists in processing

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 1

FOIA requests and assist with FOIA/PA litigation matters, and I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations.

3.      The statements in this Declaration are made on the bases of my personal knowledge of the internal operations of this office and agency and information acquired by me in the course of the performance of my official duties.

4.      I am familiar with the procedures followed by CBP in responding to requests for information pursuant to the provisions of FOIA, and with the requests made by the Plaintiff in the above-captioned matter.

5.      The purpose of this Declaration is to summarize (1) CBP's FOIA procedures; (2) the steps CBP took in conducting its search of CBP records that were potentially responsive to Plaintiff's Requests; and (3) the statutory exemptions claimed and the justification for asserting the exemptions in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

**CBP'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS**

6.      CBP is a law enforcement agency comprised of more than 60,000 employees charged with enforcing hundreds of federal statutes. Approximately 45,000 of those employees are armed law enforcement officers engaged in carrying out CBP's expansive border security mission.  CBP is comprised of three law enforcement components: Office of Field Operations (OFO), United States Border Patrol, and Air and Marine Operations. OFO is responsible for all activity, including making admissibility determinations, at ports of entry along international borders, airports and seaports.

7.      Broadly, the FOIA Division at CBP reviews FOIA requests, determines whether responsive records exist and, if so, whether they can be released in accordance with the FOIA.  In

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 2

processing such requests, the FOIA Division consults with CBP component agencies, CBP personnel and, when appropriate, with other components within DHS, as well as other Executive Branch agencies.

8.    Despite the large size of CBP as an organization, the FOIA Division currently consists of 38 full-time staff and FOIA assistance, and four supervisory employees.

9.    A GIS, also known as a FOIA processor, is tasked with reviewing information and providing assistance to managers and employees concerning FOIA issues, policies, and procedures. He or she is also responsible for processing FOIA requests for CBP records.  A GIS is responsible for reviewing and preparing draft responses to requests for releases of information and, in so doing, must apply relevant statutes, regulations, agency rules, and/or executive orders as they pertain to FOIA requests.

10.    A Branch Chief is responsible for managing policy formulation, advising agency management, and ensuring compliance with federal laws governing the release of information.  Branch Chiefs oversee the release of CBP documents and information, assist with FOIA litigation matters, and oversee the processing of FOIA responses and adherence to federal laws and regulations.

11.    Generally, the FOIA Division often has no direct access to records that may be responsive to a request.  Rather, the FOIA Division must first determine which CBP component offices are likely to have responsive information and then work with those offices to gather any potentially responsive records.  Based on the FOIA Division's familiarity with the types of records that each office maintains, assessments of where responsive records are likely to be maintained are based on a review of the content of the request itself and the nature of the records sought, as well discussions with knowledgeable agency personnel.  Accordingly, when CBP receives a FOIA request that reasonably describes the records requested and complies with the agency's rules governing the procedures for

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 3

FOIA requests, the office likely to have responsive information must search for and retrieve potentially responsive records.

## PLAINTIFF'S REQUEST AND CBP'S SEARCH FOR RESPONSIVE RECORDS

12.     On or about September 28, 2018, Plaintiff sent the following FOIA request:

All records related to policies or guidance issued by CBP's Seattle Field Office relating to CBP's interpretation of Immigration and Nationality Act § 212 (and implementing regulations) that would permit CBP to find inadmissible foreign nationals or aliens who are employed by or invest in foreign cannabis businesses which operate in full compliance with local domestic law of the jurisdiction in which they operate.

13.     On or about September 28, 2018, the request was entered into the FOIA online system under tracking number CBP-2018-090774.

14.     On March 6, 2019, Plaintiff filed the Complaint in this case.

15.     On or about March 6, 2019, CBP became aware of a second FOIA request made by Plaintiff:

All records relating to CBP's policies or practices of finding foreign nationals—or "aliens," as that term is used in the Immigration and Nationality Act § 212— inadmissible for entry to the United States based on their involvement in foreign cannabis businesses which operate lawfully under the local domestic law of the jurisdiction in which they operate;

All records relating to CBP's policies or practices referred to by Todd Owen, executive assistant commissioner for the Office of Field Operations, in the September 13, 2018 Politico.com article U.S. OFFICIAL: CANADIAN MARIJUANA USERS, WORKERS AND INVESTORS RISK LIFETIME BORDER BAN, including the following statements:

"If you work for the [Canadian cannabis] industry, that is grounds for inadmissibility"; and

"Facilitating the proliferation of the legal marijuana industry in U.S. states where it is deemed legal or Canada may affect an individual's admissibility to the U.S.";

All records relating to CBP's interpretation of Immigration and Nationality Act § 212 (and implementing regulations) that would permit CBP to find inadmissible foreign

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 4

nationals or aliens who are employed by or invest in foreign cannabis businesses which operate in full compliance with local domestic law of the jurisdiction in which they operate, including guidance to CBP field offices, field office supervisors, or CBP agents;

All records related to policies or guidance issued by CBP's Seattle Field Office relating to CBP's interpretation of Immigration and Nationality Act § 212 (and implementing regulations) that would permit CBP to find inadmissible foreign nationals or aliens who are employed by or invest in foreign cannabis businesses which operate in full compliance with local domestic law of the jurisdiction in which they operate.

16.    Shortly thereafter, the second FOIA request was entered into the FOIA online system under tracking number CBP-2019-006838.

17.    CBP's search for responsive documents to both CBP-2018-090774 and CBP-2019-006838 (collectively the Requests) was a multi-step process both in order to provide Plaintiff with documents on a rolling basis and in an effort to try and resolve any dispute and to confirm the results of its search process.

18.    First, based on my FOIA expertise and experience, following an initial review of both of the Requests, it was determined that the office most likely to maintain information responsive to the Requests was OFO. Reason being, OFO is responsible for all activity, including making admissibility determinations, at the port-of-entry along international borders, airports, and seaports, and the Requests inquire about admissibility determinations relating to individuals involved in the foreign cannabis industry. Both the OFO Seattle Field Office and the OFO Office in Washington D.C. were searched.

19.    CBP FOIA Division tasked OFO with searching CBP electronic files. The time-period of the search was not specified in the requests, and therefore OFO did not impose a date range limitation on its search of CBP electronic files.

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 5

20.    OFO Seattle Field Office searched the Seattle Field Office shared network drive, as well as CBPnet and Policy Online Document Search (PODS).  CBPnet is a nationwide network for CBP employees that contains information from memos, musters,[1] policies, directives, and other guidance.  PODS is also a nationwide network for CBP employees and is a database policy management tool intended to provide CBP employees with convenience copies of current and archived policy documents.  OFO Seattle Field Office's shared network drive is maintained by CBP and contains folders of documents created and used by CBP employees.  Potentially responsive documents would be expected to be stored in the local shared network drives as CBP employees are instructed to store final and draft documents in shared drives for access and transparency.  When conducting the search of the Seattle Field Office shared network drive  and CBPnet and PODS, OFO Seattle Field Office used the following key-word search terms which were selected by CBP based on a review of the Requests and consideration of what terms the CBP reasonably anticipated would "hit" upon potentially responsive documents:

a.    "cannabis business inadmissible"

b.    "foreign national cannabis business"

c.    "foreign national employed cannabis business"

d.    "alien employed cannabis business."

21.    OFO Headquarters in Washington, D.C. conducted four key-word searches for documents over several months.  Three OFO offices searched for documents: OFO Taskings, OFO Training, and OFO Public Affairs.  OFO Taskings conducted an initial key-word search for

---

[1] Generally, a muster is a meeting conducted at the beginning of every work shift where officers meet and gather, and hear from management about any shift or local matters, as well as any new local or national policies.

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 6

documents. The initial key words were selected by CBP based on a review of the Requests and consideration of what terms the CBP reasonably anticipated would "hit" upon potentially responsive documents. OFO Taskings conducted a second search, along with OFO Training and OFO Public Affairs. Subsequent searches were performed in an effort to further target what CBP understood Plaintiff was seeking through its Requests. For each of the key-word searches, each office searched their respective shared network drives. OFO Taskings, OFO Training, and OFO Public Affairs shared network drives are maintained by CBP and contain folders of documents created and used by CBP employees. Potentially responsive documents would be expected to be stored in the their respective shared network drives as CBP employees are instructed to store final and draft documents in shared drives for access and transparency.

    a.  OFO Taskings searched its shared network drives Enforcement Programs Division and Admissibility and Passenger Programs,[2] and used the following key-word search terms in its first search::

       i.  "legalization of marijuana"

       ii.  "Canada legalization of marijuana"

       iii.  "Canada MJ"

       iv.  "MJ"

    b.  OFO Taskings searched its shared network drives Enforcement Programs Division and Admissibility and Passenger Programs, and used the following key-word search terms in its second search:

---

[2] Included in these shared drives is a share drive folder titled "Canadian MJ" which is where materials related to the legalization of marijuana in Canada are stored.

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 7

      i.  "marijuana"

     ii.  "marihuana"

   iii.  "MJ"

   iv.  "Canada"

    v.  "Canada MJ"

   vi.  "Canada marijuana"

  vii.  "Canada marihuana"

 viii.  "Canada legalization"

   ix.  "Canada MJ legalization"

    x.  "Canada marijuana legalization"

   xi.  "Canada Legalization Marijuana"

  xii.  "Canada Marihuana Legalization"

 xiii.  "Canada Legalization Marihuana."

c. In the third and fourth searches, OFO Training searched its shared drives for the Filed Operations Academy and OFO Public Affairs searched its shared drives using the following key-word search terms:

      i.  "cannabis"

     ii.  "marijuana"

   iii.  "inadmissible to the U.S."

   iv.  "Immigration and Nationality Act"

22. Additional targeted searches were conducted by requesting OFO employees with knowledge of the issues described in the Requests to search for and provide documents potentially responsive to the Requests. The Deputy Director, Field Operations Academy; the Deputy Executive

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 8

Director, the Enforcement Policy Division Director of OFO HQ; and the Deputy Executive Director for Admissibility and Passenger Programs were consulted in these targeted searches. Additionally, the Office of Public Affairs searched for responsive documents in their files.

23. OFO Headquarters in Washington, D.C. also conducted a targeted email search. CBP searched emails sent or received by Assistant Director, Field Operations, Michael T. Freeman and Assistant Commissioner Todd C. Owen. These custodians were selected based on CBP's review of the language of the Requests and because CBP reasonably anticipated that guidance and direction provided to the Seattle Field Office and potentially responsive to the Requests would be sent, received, and/or distributed through these individuals.

   a. The time period for the search was January 1, 2018 through the date of collection.

   b. The key-words used in the email search were "muster" along with "marijuana," "marijuana," "marihuana," "MJ," and/or "cannabis."

24. Because the searches were done in steps, CBP made a series of rolling productions of documents over the course of several months. In the course of the rolling productions, certain documents were re-produced when different search processes located duplicate copies of documents. Additionally, as CBP endeavored to resolve disputes with Plaintiff, certain documents were re-produced following resolution and/or correction of an issue related to a claimed exemption or redaction. CBP made its final production on September 25, 2019.

25. However, following completion of the searches described above, Plaintiff and CBP, through counsel, continued to discuss the contents of CBP's production. As a result of those conversations CBP agreed to re-process certain documents to voluntarily withdraw certain redactions. Following those conversations, on October 23, 2019, the United States Attorney's Office for the

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 9

Western District of Washington provided to Plaintiff a comprehensive set of all the documents that had been produced by CBP, including the re-processed documents along with the other documents.

26. The United States Attorney's Office for the Western District of Washington bates-stamped these documents USAO_000001 through USAO 000123. Documents USAO_000001 through USAO 000123 therefore represent CBP's complete production to the Requests. Attached hereto as **Exhibit 1** is a true and correct copy of the email transmitting the documents along with CBP's complete production to Plaintiff's Requests.

## JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER FOIA

27. CBP FOIA Division analyzed and processed the potentially responsive documents so as to disclose as much responsive, disclosable information as possible and to only withhold or redact information that was protected from disclosure under FOIA. No responsive, reasonably segregable, non-exempt portions have been withheld from Plaintiff. Additional information about the specific documents withheld in full or withheld in part under a claimed FOIA exemption is included in the attached index, **Exhibit 2**. Additionally, the documents themselves identify which FOIA exemption is asserted in connection with a redaction because the redactions are labeled with the relevant claimed exemption. This declaration is intended to be read in conjunction with the Exhibit 2 index, and the documents themselves.

28. CBP FOIA Division withheld certain information pursuant to FOIA exemptions 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

Exemption (b)(5)

29. Section 552(b)(5) of Title 5 of the U.S. Code exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 10

records created 25 years or more before the date on which the records were requested." Relevant here, Exemption 5 protects from disclosure information normally protected in the civil discovery context, including the attorney-client privilege and the deliberative process privilege.

30.     As indicated in Exhibit 2, CBP withheld one document based on an assertion of the attorney-client privilege. This document is a legal memorandum from the Assistant Chief Counsel to the Seattle Director of Field Operations regarding an applicant for admission to United States pertaining to marijuana industry. This document was drafted for the primary purpose of providing requested legal advice to CBP in response to a specific situation that CBP had encountered. It is a confidential document that has not been shared outside CBP.

31.     As indicated in Exhibit 2, CBP withheld documents and/or portions of documents based on the deliberative process privilege. The deliberative process protects the confidentiality of pre-decisional, deliberative communications. The purpose of the deliberative process privilege is to encourage open discussion and debate regarding policy matters, without fear of premature scrutiny and confusion that could result from disclosure of considerations that may or may not have gone into an agency's decision or action. As further identified in Exhibit 2, the withheld information is internal to CBP, pre-decisional, and deliberative.

Exemption (b)(6)

32.     Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel and medical files and similar information, the release of which would constitute a clearly unwarranted invasion of personal privacy. This exemption requires balancing the public's right to disclosure against an individual's right to privacy. As further identified in Exhibit 2, the redacted documents contain information exempted from disclosure, because the privacy interests in that information

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 11

outweigh the public interest in its disclosure. CBP made individual determinations based on a balancing of the relevant information for each piece of withheld information.

33. In this case, exemption (b)(6) has been applied to names, signatures, phone numbers, and e-mail addresses, personally identifiable information, and other identifying details of government employees and other third party individuals.

34. Exemption (b)(6) has been applied to such information because its release would constitute a clearly unwarranted invasion of privacy. Government employees, including CBP law enforcement officers, and vendor employees have a protectable privacy interest in their identities that would be threatened by disclosure. Similarly, government and vendor employees have a protectable privacy interest in their phone numbers, e-mail addresses, and personal signatures that would also be threatened by disclosure. In particular, the exemptions are claimed to protect individuals from unwanted contact, annoyance, or harassment in their personal and/or private lives. In addition, the redacted names were not of high-ranking government officials; CBP made the decision to release the names of all high-ranking officials. For purpose of this exemption, a public interest exists only when information about the individual would shed light on CBP's actions or the performance of its duties. Accordingly, for each piece of information withheld, CBP made individual determinations that the individual's right to privacy outweighs whatever public interest, if any, might exist in knowing this information.

35. Exemption (b)(6) has also been applied to the personally identifiable information (such as names) and other identifying details of third party individuals because release of this information would constitute a clearly unwarranted invasion of privacy. Third party individuals have a protectable privacy interest in their identities and personally identifiable information that would be threatened by disclosure. For each piece of information withheld, CBP made individual determinations that release

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 12

of this information would not shed light on the actions of CBP and there is no public interest in the disclosure of this information.  Accordingly, the individual's right to privacy outweighs whatever public interest, if any, might exist in knowing the information.

Exemption (b)(7)(C)

36.     Section 552(b)(7) of Title 5 of the U.S. Code exempts from disclosure certain records or information that are "compiled for law enforcement purposes."  The records at issue in this case were compiled for law enforcement purposes in that the information is created and used by CBP in its law enforcement mission to secure the border of the United States.

37.     Section 552(b)(7)(C) of Title 5 of the U.S. Code exempts from disclosure law enforcement records or information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This exemption extends to CBP as a law enforcement agency. Exemption (b)(7)(C) is designed to protect, among other things, law enforcement personnel from harassment and annoyance in the conduct of their official duties and in their private lives, which could conceivably result from the public disclosure of their identities.  For each piece of information withheld, CBP made individual determinations that the privacy interest in the identity of an individual in the redacted document outweighs any public interest in disclosure of that information.

38.     Exemption (b)(7)(C) has been applied to phone numbers and e-mail addresses for government employees, names of government employees, and personally identifiable information and other identifying details of third party individuals because release of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The records provided in response to Plaintiff's request were compiled for law enforcement purposes in that the information contained within these records is created and used by CBP in its mission to secure the borders of the United States.  The holders of the redacted government phone numbers and e-mail addresses and the

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 13

named government employees have a protectable privacy interest in their identities that would be compromised by the release of this information. Similarly, the third party individuals whose personally identifiable information and other identifying details appear in the records have a protectable privacy interest in their identities that would be compromised by the release of this information. In particular, the exemptions are claimed to protect individuals from unwanted contact, annoyance, or harassment in their personal and/or private lives. Release of this specific information would not shed light on the actions of CBP, and outweighs any conceivable public interest in the disclosure of this information. In addition, the redacted names were not of high-ranking government officials; CBP made the decision to release the names of all high-ranking officials. Accordingly, for each piece of information withheld, CBP made individual determinations that the individual's right to privacy outweighs whatever public interest, if any, might exist in knowing this information.

Exemption (b)(7)(E)

39.    As noted above, Section 552(b)(7) of Title 5 of the U.S. Code exempts from disclosure certain records or information that are "compiled for law enforcement purposes." The records at issue in this case were compiled for law enforcement purposes in that the information is created and used by CBP in its law enforcement mission to secure the border of the United States.

40.    Section 552(b)(7)(E) of Title 5 of the U.S. Code exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

41.    In this case, exemption (b)(7)(E) has been applied to information including procedures and practices used to determine admissibility and other similar information that directly relates to

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CBP's law enforcement mission. The disclosure of such information could reveal law enforcement sensitive information that could reasonably be expected to permit individuals to effectuate countermeasures, alter their patterns of conduct to avoid detection, or otherwise circumvent the law.

42.     I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 10th day of March 2020.

*Patrick Howard*

Patrick Howard
Branch Chief, FOIA Division
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security

DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 15