UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVIS WRIGHT TREMAINE LLP,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | CASE NO. C19-334 RSM<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter is before the Court on cross-motions for summary judgment. In 2018, Plaintiff Davis Wright Tremaine LLP made two Freedom of Information Act ("FOIA") requests to Defendant United States Customs and Border Protection ("CBP"). The requests focused on a purported policy change whereby CBP began classifying "foreign nationals who worked in or with the legal cannabis industry in Canada or the United States [as] 'drug traffickers.'" Dkt. #24 at 6.[1] CBP did not respond to the requests and only began to comply with its legal obligations under FOIA after Plaintiff filed this suit. CBP ultimately disclosed some records, many of which were redacted.

---

[1] Throughout, the Court cites to the docket and page numbers applied by the Court's CM/ECF system. Where appropriate, the Court cites to numbered paragraphs or page and line numbers.

ORDER – 1

Plaintiff seeks summary judgment on the basis that CBP has not made "adequate searches for responsive documents, has not located or produced all responsive documents, and has withheld or redacted the few responsive records it has located." *Id.* Conversely, CBP seeks summary judgment in its favor and submits declarations detailing its search and justifying the basis for its redactions and withholdings. Each maintains that the factual record allows the Court to rule as a matter of law. Having considered the briefing and the record,[2] the Court concludes that the record does not adequately support summary judgment, in full, in favor of either party and resolves the matter as follows.

## II. BACKGROUND

### A. Plaintiff's FOIA Requests

The Immigration and Nationality Act prohibits admission of any foreign national who "is or has been an illicit trafficker in any controlled substance . . ., or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled" substance. 8 U.S.C. § 1182(a)(2)(C)(i).[3] After Canada legalized the recreational use of marijuana in mid-2018, Plaintiff became aware that CBP may be denying admission to foreign nationals who had worked in legalized Canadian and American cannabis industries or those foreign nationals "merely 'involved with the cannabis economy.'" Dkt. #24 at 8. Specifically, Plaintiff learned of a July 5, 2018 news article detailing the experience of three employees of a Canadian agricultural equipment manufacturer. The three employees were traveling to the

---

[2] While the parties have requested oral argument, the Court finds oral argument unnecessary to its resolution of the motions. LCR 7(b)(4); *see also*, *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (court may deny request for oral argument when parties submit briefs to the court).

[3] The statute further restricts admission of individuals who have knowingly "obtained any financial or other benefit from the illicit activity of" the trafficker in the last five years. 8 U.S.C. § 1182(a)(2)(C)(ii).

ORDER – 2

United States to meet with another company to begin design work on an agricultural machine their company might develop to be used in the Canadian cannabis industry. Dkt. #25-1 at 2–4 (attaching Perrin Grauer, *Canadian Cannabis Workers Targeted by U.S. Border Guards for Lifetime Bans*, THE STAR (Toronto), July 5, 2018, *available at*: https://www.thestar.com/vancouver/2018/07/05/canadian-cannabis-workers-targeted-by-us-border-guards-for-lifetime-bans.html). Despite no criminal records and no prior work activity related to cannabis, the employees were denied admission as "drug traffickers" and were banned, for life,[4] from entering the United States. *Id.*

Additional reporting, based on discussions with Todd Owen, CBP's executive assistant commissioner for the Office of Field Operations, indicated that border agents would "continue to apply long-standing U.S. federal laws and regulations that treat marijuana as a banned substance—and participants in the cannabis industry as drug traffickers—who are inadmissible into the U.S." Dkt. #25-1 at 7–11 (attaching Luiza Ch. Savage, *U.S. Official: Canadian Marijuana Users, Workers and Investors Risk Lifetime Border Ban*, POLITICO, Sept. 13, 2018, *available at*: https://www.politico.com/story/2018/09/13/canada-weed-pot-border-783260). Quoted directly, Mr. Owen explained: "If you work for the [marijuana] industry, that is grounds for inadmissibility." *Id.* (quotation marks omitted). Further, Mr. Owen explained that even those merely investing in legal cannabis companies would be deemed inadmissible: "We don't recognize that as a legal business." *Id.* Plaintiff maintains that this represented a change in policy.

//

//

---

[4] Those subject to lifetime bans may seek limited waivers under certain circumstances.

ORDER – 3

Plaintiff was concerned that CBP's approach may significantly impact some of its clients and sought further information from CBP.  Plaintiff made FOIA requests to both CBP's local field office and its national office.  From CBP's Washington D.C. office, Plaintiff sought:

- All records relating to CBP's policies or practices of finding foreign nationals—or "aliens," as that term is used in the Immigration and Nationality Act § 212—inadmissible for entry to the United States based on their involvement in foreign cannabis businesses which operate lawfully under the local domestic law of the jurisdiction in which they operate;

- All records relating to CBP's policies or practices referred to by Todd Owen, executive assistant commissioner for the Office of Field Operations, in the September 13, 2018 Politico.com article U.S. OFFICIAL: CANADIAN MARIJUANA USERS, WORKERS AND INVESTORS RISK LIFETIME BORDER BAN, including the following statements:

    - "If you work for the [Canadian cannabis] industry, that is grounds for inadmissibility"; and

    - "Facilitating the proliferation of the legal marijuana industry in U.S. states where it is deemed legal or Canada may affect an individual's admissibility to the U.S.";

- All records relating to CBP's interpretation of Immigration and Nationality Act § 212 (and implementing regulations) that would permit CBP to find inadmissible foreign nationals or aliens who are employed by or invest in foreign cannabis businesses which operate in full compliance with local domestic law of the jurisdiction in which they operate, including guidance to CBP field offices, field office supervisors, or CBP agents;

- All records related to policies or guidance issued by CBP's Seattle Field Office relating to CBP's interpretation of Immigration and Nationality Act § 212 (and implementing regulations) that would permit CBP to find inadmissible foreign nationals or aliens who are employed by or invest in foreign cannabis businesses which operate in full compliance with local domestic law of the jurisdiction in which they operate.

Dkt. #1 at 10–11 (footnote omitted).  Plaintiff submitted the last bulleted request, specific to CBP's Seattle Field Office, to the Seattle Field Office directly.  *Id.* at 8.  Plaintiff did not receive any response to its requests and, after five months, initiated this action.  *Id.* at ¶ 16.

ORDER – 4

**B. Customs and Border Protection's Response**

CBP does not contest that it only began responding to Plaintiff's requests after Plaintiff filed this action. *See* Dkt. #29 at ¶¶ 12–17 (indicating that CBP became aware of the national office request only after Plaintiff filed this action and that CBP began responding at that time). Detailing its response, CBP submits the declaration of Patrick Howard, a Branch Chief within CBP's Freedom of Information Act Division ("FOIA Division"). *Id.* at ¶ 1. Mr. Howard is familiar with how CBP responds to FOIA requests generally and with how CBP responded to Plaintiff's requests. Of note, the FOIA Division often does not have direct access to responsive records and is instead charged with determining which of CBP's component offices[5] are likely to have responsive records. *Id.* at ¶ 11. Those component offices then gather responsive records and provide them to the FOIA Division for processing. *Id.*

Mr. Howard appears to have made the first review of Plaintiff's requests and referred the requests to the Office of Field Operations ("OFO") as "the office most likely to maintain information responsive to the Requests." *Id.* at ¶ 18. Both the Seattle OFO Field Office and the national OFO office were tasked with searching for responsive records to provide to the FOIA Division for review. *Id.* at ¶¶ 18–19. The Seattle Office began, by searching all network accessible storage drives for electronic records, using the search terms: "cannabis business inadmissible;" "foreign national cannabis business;" "foreign national employed cannabis business;" and "alien employed cannabis business." *Id.* at ¶ 20. The Seattle Office's search used

---

[5] The record does not establish how many "component offices" there are within CBP. Confusingly, Mr. Howard refers to "three law enforcement components: Office of Field Operations (OFO), United States Border Patrol, and Air and Marine Operations." Dkt. #29 at ¶¶ 6–7. However, these three law enforcement components do not appear to correspond with all CBP "component offices." *See* Dkt. #34 at ¶¶ 8–12 (referencing the Office of Chief Counsel ("OCC"), CBP's Enterprise Services – Office of Training Development ("OTD"), the Office of Public Affairs ("OPA"), and the "Commissioner's Office").

ORDER – 5

an "and" connector, "meaning that the search identified documents that included all of the listed terms identified within the quotes, in any order." Dkt. #34 at ¶ 14(a).[6] Mr. Howard does not indicate that he was involved in crafting this search or when this search was performed.

The national OFO office's search began with "OFO Taskings" using "key-word search terms" to search "its shared network drives Enforcement Programs Division and Admissibility and Passenger Programs."[7] Dkt. #29 at ¶ 21(a). OFO Taskings searched for "legalization of marijuana," "Canada legalization of marijuana," "Canada MJ," and "MJ." *Id.* These searches were performed in a manner that would only identify "documents that included the quoted language as written." Dkt. #34 at ¶ 14(b). Again, Mr. Howard does not indicate that he was involved in crafting this search or when this search was performed.

At a later point, OFO Taskings conducted another search of "its shared network drives Enforcement Programs Division and Admissibility and Passenger Programs." Dkt. #29 at ¶ 21(b). This second search used the following search terms: (i) "marijuana;" (ii) "marihuana;" (iii) "MJ;" (iv) "Canada;" (v) "Canada MJ;" (vi) "Canada marijuana;" (vii) "Canada marihuana;" (viii) "Canada legalization;" (ix) "Canada MJ legalization;" (x) "Canada marijuana legalization;" (xi) "Canada Legalization Marijuana;" (xii) "Canada Marihuana Legalization;" and (xiii) "Canada Legalization Marihuana." *Id.* The searches were performed in a manner that only identified "documents that included the quoted language as written." Dkt. #34 at ¶ 14(c). Mr. Howard does not indicate that he was involved in crafting this search or when this search was performed.

---

[6] Mr. Howard submitted two declarations, one of which was filed with CBP's reply. Plaintiff did not have an opportunity to respond to Mr. Howard's second declaration.

[7] The record does not establish whether these were all the accessible shared network drives.

ORDER – 6

CBP later extended the search to "OFO Training" and "OFO Public Affairs." As Mr. Howard explains in a second declaration, submitted with CBP's reply, these searches were not actually within the OFO office component but were in "sub-sections" of CBP's separate Office of Training Development ("OTD") and CBP's separate Office of Public Affairs ("OPA"). *Id.* at ¶ 12(b). In OTD, the "shared drives for the Field Operations Academy"[8] were searched "using the following key-word search terms: (i) 'cannabis;' (ii) 'marijuana;' (iii) 'inadmissible to the U.S.;' [and] (iv) 'Immigration and Nationality Act.'" Dkt. #34 at ¶ 14(d); Dkt. #29 at ¶ 21(c). These searches were performed using "[a]n 'or' connector . . ., meaning that the search identified documents that included any of the listed terms identified within the quotes." Dkt. #34 at ¶ 14(d). Mr. Howard does not indicate that he was involved in crafting this search or when this search was performed.

The search conducted in OPA appears to have been less formal. In his first declaration, Mr. Howard indicates that OPA "searched its shared drives" for the same terms as were used in OTD's search. Dkt. #29 at ¶ 21(c). However, Mr. Howard's second declaration indicates that the OPA search was instead "conducted by the person who created the documents. [This unidentified] CBP officer reviewed documents that included any of the search terms identified in Paragraph 21 of the First Howard Declaration." Dkt. #34 at ¶ 14(e). The record does not clarify whether a true search of OPA was made or whether the unspecified individual merely selected and reviewed certain of the individual's own records that the individual believed contained the responsive terms. Mr. Howard gives no indication that he was involved in crafting this search or when this search was performed.

---

[8] Mr. Howard does not specify how many other shared drives are accessible or whether OFO interacts with other "sub-sections" within these, or other, component offices.

ORDER – 7

CBP indicates that it made additional searches as well. First, "[t]he Deputy Director, Field Operations Academy; the Deputy Executive Director, the Enforcement Policy Division Director of OFO HQ; and the Deputy Executive Director for Admissibility and Passenger Programs" were asked to provide responsive records. Dkt. #29 at ¶ 22. Mr. Howard does not specify when or whether these searches were performed or whether any records were provided. Second, CBP also "searched emails sent or received by Assistant Director, Field Operation, Michael T. Freeman and Assistant Commissioner Todd C. Owen." *Id.* at ¶ 23. CBP selected these two individuals because it "reasonably anticipated that guidance and direction provided to the Seattle Field Office and potentially responsive to the Requests would be sent, received, and/or distributed through these individuals." *Id.* "The key-words used in the email search were 'muster' along with 'marijuana,' 'marijuana,' [sic] 'marihuana,' 'MJ,' and/or 'cannabis.'" *Id.* at ¶ 23(b). Mr. Howard does not indicate that he was involved in selecting these custodians or in crafting the searches and does not provide dates when the search was performed.

Overall, CBP does little to establish when its searches and productions took place. At best, Mr. Howard indicates that CBP's response "was a multi-step process both in order to provide Plaintiff with documents on a rolling basis and in an effort to try and resolve any dispute and to confirm the results of its search process." Dkt. #29 at ¶ 17. CBP began responding on March 6, 2019, and made its final production on October 23, 2019. *Id.* at ¶¶ 14, 25. In total, CBP produced 116[9] pages, containing 13 documents. Dkt. #29-1 at 10–137; Dkt. #25 at ¶ 33.

//

//

---

[9] Mr. Howard indicates that 123 pages were provided. However, it appears that CBP withheld two documents in their entirety. *See* Dkt. #29-2 (noting USAO_000003 to USAO_000006 and USAO_000045 to USAO_000047 were withheld); Dkt. #29-1 (omitting those pages).

ORDER – 8

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747. However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

#### B. Freedom of Information Act Claims

FOIA "'was enacted to facilitate public access to [g]overnment documents' by 'establish[ing] a judicially enforceable right to secure [government] information from possibly unwilling official hands.'" *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (quoting *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009)). The Supreme Court has interpreted the disclosure provisions of FOIA broadly, noting that the act was animated by a "philosophy of full agency disclosure." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146,

ORDER – 9

152 (1989); *see also Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) ("disclosure, not secrecy, is the dominant objective of the Act"). FOIA's nine statutory exemptions "must be narrowly construed." *John Doe Agency*, 493 U.S. at 152.

The key question in a FOIA action is whether the Government improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). "Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Shannahan v. I.R.S.*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009) (internal quotations omitted). This is because "the facts are rarely in dispute, and courts generally need not resolve whether there is a genuine issue of material fact." *Id.* In considering a summary judgment motion in a FOIA case, courts are guided by a two-step inquiry. The court first evaluates whether the agency conducted a search that was "reasonably calculated to uncover all relevant documents." *Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal citations omitted)). If the agency satisfies this burden, the court then determines whether the undisclosed information falls within one of the nine FOIA exemptions. *Shannahan*, 637 F. Supp. at 912.

"FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Lahr*, 569 F.3d at 986 (quoting *Zemansky*, 767 F.2d at 571 (9th Cir. 1985)). FOIA places the burden "expressly . . . 'on the agency to sustain its action.'" *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989). "The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485 (emphasis in original)). The agency may establish an adequate search upon "reasonably detailed,

ORDER – 10

nonconclusory affidavits submitted in good faith" to demonstrate that the search was adequate. *Id.* (quoting *Weisberg,* 745 F.2d at 1485). Further, these affidavits are "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Leopold v. CIA*, 177 F. Supp. 3d 479, 485 (D.D.C. 2016) (quoting *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991)) (quotation marks omitted).

**1.  Customs and Border Protection's Motion for Summary Judgment**

On first look, and afforded the presumption of good faith, CBP's evidence appears to paint a clear picture of a reasonable and comprehensive response to Plaintiff's requests. However, the details are far hazier. Drawing reasonable inferences in favor of Plaintiff, the Court is left with too many questions to find that CBP's search was reasonable and adequate as a matter of law.

First, CBP has not provided adequate detail of its search at almost every level. CBP focused its search on its OFO component office. But this is only one "component office" of CBP and CBP does not establish how many component offices it has or how the component offices proportionally relate to each other. CBP may have searched a significant portion of the agency's records or it may have searched an exceedingly small portion of the agency's records.

Second, and more importantly, Mr. Howard's declarations do not adequately establish that CBP searched for "all relevant documents." Mr. Howard testifies only that OFO was the office "most likely" to "maintain" responsive records. CBP does not establish that other component offices were *unlikely* to *possess* responsive records. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) ("It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden."); *Leopold*, 177 F. Supp. 3d at 491 (affidavits should "aver[]

ORDER – 11

that all files likely to contain responsive materials (if such records exist) were searched") (citation omitted)); *Ctr. for Biological Diversity v. Office of U.S. Trade Representative*, 450 F. App'x 605, 608 (9th Cir. 2011) (noting declarations' failure to "provide specific information regarding what files were searched, what search terms were used, why further searches are *unlikely* to produce additional records, or why additional searches are impractical") (emphasis added). *C.f. Hamdan*, 797 F.3d at 770 (noting adequate search when there appeared "to be no indication that the Bureau was involved in matters related to" the request).

For instance, Mr. Howard specifies that some component offices were not searched because, though they created relevant documents, OFO had at least some of their relevant documents and a "separate search [of other offices] would have been redundant and not reasonable under the circumstances." *See* Dkt. #34 at ¶ 10 (noting that a legal memorandum created by the Office of Chief Counsel ("OCC") was found in the search of OFO's records). The Court will put aside, for now, that Mr. Howard provides no explanation of "the circumstances" or why the search would have not been "reasonable" under them. Even so, the Court is unable to see why discovery of a single document created by a different component office makes it *less likely* that the office will have other nonduplicative and relevant records. Taking OCC's legal memorandum as an example, the Court struggles to conclude that a single attorney drafted a single document before transmitting it to OFO alone.[10] That may be the case, but drawing presumptions in Plaintiff's favor, it was unreasonable to not search additional component offices. *Hamdan*, 797 F.3d at 772 (noting that "a standard search in response to a general request" may be appropriate, but that agency "must rethink its assessment of what is a 'reasonable' search in light of leads that emerge").

---

[10] And again, the possibility of finding a redundant record does not make an entire search redundant.

ORDER – 12

1      Third, even as to the searches within OFO, CBP does not establish that its search was
2 reasonably thorough.  In its first search, OFO searched for exact phrases that, drawing inferences
3 in Plaintiff's favor, seem unlikely to appear in all (or any) relevant records.  *See* Dkt. #29 at ¶ 21
4 (indicating search for the exact phrase "Canada MJ" and "Canada legalization of marijuana").
5 Such restrictive terms are not reasonable in a search for all relevant records.  But, CBP responds,
6 the agency later did more expansive key-word searching.  *See* Dkt. #29 at ¶ 21(b) (providing
7 extensive list of general search terms).  Fair enough, but again OFO searched for exact quoted
8 terms.  Dkt. #34 at ¶ 14(c).  Further, those searches were limited to OFO's "shared network drives
9 Enforcement Programs Division and Admissibility and Passenger Programs."  Dkt. #29 at
10 ¶ 21(a), (b), (c).  CBP provides no indication that these were all the accessible network drives
11 within OFO or why searching others may be unreasonable.  *Hamdan*, 797 F.3d at 771–72 (noting
12 diligent search where agency used "many variations of the terms suggested by Plaintiffs to
13 account for spelling or other inconsistencies").

14      Fourth, and while perhaps not explicitly CBP's burden to bear, CBP provides no
15 indication of why further searches were *un*reasonable.  CBP gives no indication of the volume of
16 requests it handles, no indication of the volume of relevant records requiring processing on these
17 requests, no indication of the time spent responding to Plaintiff's requests, no indication that it
18 would not have been reasonable to do more, and no indication that further searches would have
19 interfered with CBP's operation.  "[A]n agency has no right to resist disclosure because the
20 request fails reasonably [to] describe records unless it has first made a good faith attempt to assist
21 the requester in satisfying that requirement." *Yagman v. Pompeo*, 868 F.3d 1075, 1084 (9th Cir.
22 2017) (internal quotations and citations omitted) (second alteration in original).

23      Fifth, and not necessarily the final relevant issue, the overall search process appears
24 overly fragmented.  Mr. Howard appears unnecessarily withheld from the process.  While he was

ORDER – 13

charged with determining the office *most likely* to *maintain* responsive information, he does not appear to have been involved with any searching even though he was likely familiar with FOIA's requirements.  CBP did not utilize standard, or even consistent, search terms across searches.[11] This leads to an unfortunate appearance of an agency hand picking the documents to provide.  FOIA expects more than ad-hoc searching by whichever individual is left holding the bag.  From afar, CBP's actions appear intended to obfuscate and delay and leave the disturbing impression that CBP has spent more time opposing any disclosure than it has searching for responsive records.  As CBP specifies, it need not conduct a perfect search, only a reasonable one.  But these numerous unresolved factual issues, and others, preclude the Court from concluding that CBP's search was adequate as a matter of law.

**2. Plaintiff's Motion for Summary Judgment**

The Court also cannot grant Plaintiff's summary judgment motion in full for many of the same reasons.  Numerous factual issues precluded a ruling in CBP's favor when construing factual issues and presumptions in Plaintiff's favor.  But CBP's evidence is not so deficient— now construing facts and presumptions in CBP's favor—as to establish that CBP's search was inadequate as a matter of law, except for in two specific regards.

First, the Court finds CBP's email search to be patently unreasonable as a matter of law.  CBP, an agency of more than 60,000, searched the email records of only two individuals.  That may not be per se unreasonable, but it stands starkly given the unquestionably common use of email to coordinate, communicate, and transmit both formal and informal information at all

---

[11] CBP justifies this by blandly asserting that the locations and search terms "were selected by CBP based on a review of the Requests and consideration of what terms the CBP reasonably anticipated would 'hit' upon potentially responsive documents." Dkt. #29 at ¶ 21. This strikes the Court as entirely conclusory and generic.  CBP provides no explanation of why different search terms were more likely to return results in different searches.

ORDER – 14

levels. However, CBP further fails to establish that those two custodians were the only ones *likely* to have responsive records. Dkt. #29 at ¶ 23 (indicating that CBP selected the two individuals because it "reasonably anticipated that guidance and direction provided to the Seattle Field Office and potentially responsive to the Requests would be sent, received, and/or distributed through these individuals"). Again, CBP does nothing to indicate that responsive records were *unlikely* to be found in the email communications of its other 60,000 employees.

Even then, CBP took the further step of restricting its key-word search to: "'muster' *along with* 'marijuana,' 'marijuana,' [sic] 'marihuana,' 'MJ,' and/or 'cannabis.'" *Id.* at ¶ 23(b). The Court notes, as Plaintiff pointed out, that this effectively limited the search to only emails "containing the word 'muster.'"[12] CBP does not even address the restrictions placed on its email searches, much less explain why it reasonably believed that every email responsive to Plaintiff's requests would necessarily contain "muster." *See* Dkt. #32 at 5. CBP does not explain why every relevant email was likely to contain the word "muster." The Court grants Plaintiff summary judgment on this issue and directs CBP to conduct reasonable—yet substantial[13]—searches for emails responsive to Plaintiff's requests.

Second, Plaintiff points out that CBP failed to "consult" with Todd Owen in its search or even to have him search for relevant records he may have access to. *Id.* at 4. Plaintiff posits that "Mr. Owen may be the only CBP official who has publicly discussed the" relevant issue and is therefore, "'most likely' to know to which policies he was referring." *Id.* at 4–5. CBP concedes

---

[12] "Generally, a muster is a meeting conducted at the beginning of every work shift where officers meet and gather and hear from management about any shift or local matters, as well as any new local or national policies." Dkt. #29 at ¶ 20 n.1.

[13] The Court notes, for instance, that CBP has chosen not to argue or present the Court with evidence demonstrating that there are reasonable limitations on its ability to search email and have presented only vague explanations to Plaintiff.

ORDER – 15

that it did not consult with Mr. Owen but responds that it searched Mr. Owen's email for relevant records. Dkt. #33 at 5. However, as noted above, the Court found that email search unreasonably limited and CBP has not attempted to establish that contacting Mr. Owen is unlikely to lead to responsive documents. The Court grants Plaintiff summary judgment on this issue and directs CBP to consult with Mr. Owen, process any responsive records he may have, and follow any leads reasonably arising therefrom.

### 3. Conclusion

In sum, this is one of the FOIA cases that cannot be entirely resolved on motions for summary judgment. *See Hamden*, 797 F.3d at 771 ("it may be the case that 'if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is inappropriate'" (citation omitted)).

## C. Redactions and Attorneys' Fees

Because the matter of whether CBP conducted an adequate search remains unresolved, the Court does not find it appropriate to address individual redactions at this time. Likewise, the Court finds it inappropriate to address Plaintiff's request for attorneys' fees at this time.

## IV.   CONCLUSION

Accordingly, having considered the cross-motions for summary judgment, the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court finds and ORDERS:

1. Plaintiff's Motion for Summary Judgment (Dkt. #24) is GRANTED in part and DENIED in part as specified above.
   a. Within fourteen (14) days of this Order, CBP shall consult with Mr. Owen regarding Plaintiff's requests. Within thirty (30) days CBP shall gather, process, and produce any responsive documents available to Mr. Owen, to the extent they are not exempt

ORDER – 16

from disclosure. Within forty-five (45) days, CBP shall search for, gather, process, and produce, to the extent they are not exempt from disclosure, any responsive documents identified in discussions with Mr. Owen or in records available to Mr. Owen.

   b. Within fourteen (14) days of this Order, the parties shall meet and confer in an attempt to agree upon a reasonable search of CBP emails for records responsive to Plaintiff's requests.

   c. Within forty-five (45) days of this Order, CBP shall make a reasonable search of CBP emails for records responsive to Plaintiff's requests and shall process and produce all responsive emails and attachments to the extent they are not exempt from disclosure.

   d. The Court will consider alterations agreed to by the parties.

2. Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (Dkt. #28) is DENIED.

3. Within sixty (60) days, the parties shall file a joint status report advising the Court on how this matter should proceed as to any unresolved matters.

Dated this 16th day of June, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 17