THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVIS WRIGHT TREMAINE LLP,

　　　　　　　　　Plaintiff,

　　　　v.

UNITED STATES CUSTOMS AND BORDER PROTECTION,

　　　　　　　　　Defendant.

Case No. 2:19-cv-334-RSM

FOURTH DECLARATION OF PATRICK HOWARD

I, Patrick Howard, declare as follows:

　　　1.　　　I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee the processing of requests for records submitted to CBP pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and assist with FOIA/PA litigation matters. I am familiar with the procedures followed by CBP in responding to requests for information pursuant to the provisions of FOIA and any resulting litigation.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.      The statements made in this Fourth Declaration are made on the bases of my personal knowledge of the internal operations of CBP, the FOIA Division, and information acquired by me in the course of the performance of my official duties.

3.      I have previously submitted three Declarations in this case: a Declaration dated March 10, 2020, Dkt. 29; a Second Declaration dated April 6, 2020, Dkt. 34; and a Third Declaration dated October 19, 2020, Dkt. 44.  I incorporate my previous statements in those Declarations into this Fourth Declaration and only repeat information as needed to provide a sufficient background for the information provided herein.

4.      I am familiar with the Plaintiff's FOIA requests: CBP-2018-090774 and CBP-2019-006838 (collectively, FOIA Requests), and I am familiar with the searches conducted for these FOIA Requests and in the above-captioned matter.

5.      Last June I received, read, and reviewed the Court's Order on the Parties' Cross Motions for Summary Judgment, Dkt. 36, directing in relevant part that:

(a) Within fourteen (14) days of this Order, CBP shall consult with Mr. Owen regarding Plaintiff's requests. Within thirty (30) days CBP shall gather, process, and produce any responsive documents available to Mr. Owen, to the extent they are not exempt from disclosure. Within forty-five (45) days, CBP shall search for, gather, process, and produce, to the extent they are not exempt from disclosure, any responsive documents identified in discussions with Mr. Owen or in records available to Mr. Owen.

(b) Within fourteen (14) days of this Order, the parties shall meet and confer in an attempt to agree upon a reasonable search of CBP emails for records responsive to Plaintiff's requests.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 2

(c) Within forty-five (45) days of this Order, CBP shall make a reasonable search of CBP emails for records responsive to Plaintiff's requests and shall process and produce all responsive emails and attachments to the extent they are not exempt from disclosure.

(d) The Court will consider alterations agreed to by the parties.

6. I am familiar with CBP's actions to comply with this Court's Order, Dkt. 36.

7. This Fourth Declaration provides an overview of the following topics:

A. The processing of records related to Plaintiff's FOIA Requests;

B. CBP's general process for responding to FOIA requests, including Plaintiff's FOIA Requests;

C. CBP's general operations and Plaintiff's FOIA Requests;

D. CBP's resource constraints and workload constraints; and

E. CBP's steps taken since the Court issued its Order.

**A. The Processing of Records Relating to Plaintiff's FOIA Requests**

8. As set forth in my previous Declarations, prior to the Court's Order, Dkt. 36, CBP searched for and located documents potentially responsive to Plaintiff's FOIA Requests. CBP then scoped the records to determine whether they were responsive to Plaintiff's FOIA Requests. Following the responsiveness determination, CBP released to Plaintiff 117 pages in full or in part and withheld six pages[1] in full pursuant to FOIA exemptions. The pages are bates numbered USAO_000001 to USA_000123.

9. Following the Court's Order, Dkt. 36, CBP has conducted additional searches to locate responsive records, which are detailed in Section E below. CBP released responsive records in three

---

[1] USAO_000003 to USAO_000006, and USAO_000045 to USAO_000047.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 3

productions, also detailed further in Section E below.  On July 16, 2020, CBP released to Plaintiff documents now bates numbered CBP-DWT-00001 to CBP-DWT-00005.[2]  On August 10, 2020, CBP released to Plaintiff documents now bates numbered CBP-DWT-00006 to CBP-DWT-00180.[3]  On October 23, 2020, CBP released to Plaintiff documents bates numbered CBP-DWT-00181 to CBP-DWT-00205.  A copy of the FOIA Division's release email and cover letter for each release are attached as Exhibits A, B, and C.[4]

**B. CBP's General Process for Responding to FOIA Requests, Including Plaintiff's FOIA Requests**

10.    In general, after receiving a FOIA request, CBP's standard practice is as follows:  the FOIA Division reviews the FOIA request; determines if the FOIA request reasonably describes the records requested and complies with applicable agency rules and procedures; determines if responsive records exist, often by reaching out to CBP offices and personnel; facilitates a search for potentially responsive records; and determines whether records from a search are responsive to the FOIA request and/or should be partially redacted or withheld under any one of FOIA's nine statutory exemptions.

11.    The FOIA Division divides FOIA requests into two categories: simple and complex.  A simple request—also referred to as a traveler request—is one where a member of the traveling public requests records related to his or her travel.  Generally, these records are housed in accessible databases that can be swiftly searched, and require routine, minimal redactions due to their display format.

---

[2] On the date of the release, CBP did not include bates numbers, and therefore, re-released the production with bates numbers on September 22, 2020, as discussed further below.
[3] On the date of the release, CBP did not include bates numbers, and therefore, re-released the production with bates numbers on September 22, 2020, as discussed further below.
[4] These Exhibits include FOIA Division's email and release letter, but not the documents themselves.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 4

12.    Complex FOIA requests—also referred to as non-traveler requests—are all other types of FOIA requests received.  Examples of complex requests include requests from businesses for import and export records, requests for information related to an Executive Order[5], and requests from media sources or special interest groups focused on a variety of matters not specific to an individual traveler.

13.    For complex FOIA requests, the FOIA Division must determine which CBP offices are likely to have responsive information.  FOIA Division then works with those offices to determine which custodians are likely to have responsive records.  In most cases, FOIA Division works directly with the custodian to gather electronic records and hard copy (paper) records.  This is often because many records are not centrally located and/or retrievable by the FOIA Division.  Rather, they must be collected by different offices or custodians and then sent to the FOIA Division for review.  Additionally, in my experience, individual offices may have different ways of storing their records, or particular search terms may be better suited for one office over another based on the type of work they do or documents they maintain.  Consequently, the FOIA Division often confers with an office or custodian to execute a search based on the language of the FOIA request and the way an office or custodian maintains potentially responsive records.  Sometimes based on the facts of a situation or records at issue, it makes sense to craft different searches among different offices or custodians.

14.    In less frequent instances like this case, where high level executives custodians, including attorneys within CBP's Office of Chief Counsel (OCC) are being asked to search for responsive records, the FOIA Division typically asks the custodians to search for possible responsive hard copy (paper) records, and provide a list of the various systems of records that are likely to have electronic

---

[5] For example, for Executive Order 13,769, the FOIA Division has received more than 100 FOIA requests and is processing approximately 120,000 pages.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 5

responsive records, like email or Outlook records, computer hard drives, and/or computer shared drives. For example, a custodian may be asked to search for responsive records to a FOIA request, and in response the custodian may provide responsive hard copy (paper) records, as well as state that they have responsive records in their email and on their shared drive at a specific pathway location, like A:\shareddrive\work.[6]   From these identified sources, the FOIA Division may coordinate additional searches.

15.    CBP's Office of Information Technology (OIT) eDiscovery team may assist the FOIA Division with FOIA requests. For a complex FOIA request, after gathering from the custodian a list of systems of records that are likely to have responsive records, the FOIA Division often will work with CBP's OIT to search those locations for responsive records. For example, if the custodian states that responsive records are likely in their email and/or shared drive (with the pathway provided) CBP's OIT division may be able to search for records in those locations.

16.    To search, CBP's OIT eDiscovery team utilizes a commercially available eDiscovery software tool to conduct electronic searches for e-mails and attachments and other electronic records from designated custodians (including both current and former CBP employees whose records are maintained). In order to locate electronic records in response to a FOIA request, FOIA Division identifies custodian e-mail accounts/folders to be collected and searched, and the search terms and desired timeframe for the search. Personnel with expertise in operating the eDiscovery tool collect the custodian's accounts/folders and then executes searches of those accounts/folders using the identified search terms and timeframe to locate potentially responsive records.

---

[6] This example of pathway an illustrative example of what could be provided to the FOIA Division; this is not an actual pathway.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 6

17. The results of the searches are provided to the FOIA Division to review, scope for responsiveness, process in accordance with FOIA, and produce. Once the FOIA Division determines the page to be responsive to Plaintiff's request, the FOIA Division reviews responsive records for information exempt from disclosure. The FOIA Division processor must (1) examine, line-by-line, each responsive page to identify potential redactions, (2) apply redactions (if necessary), and (3) individually label reach redaction with the applicable exemption(s).

18. Complex FOIA requests generally require a more extensive and complex review process. For these, generally, the FOIA Division employs a multi-office review process that ensure that all information that must be protected from release is properly withheld and that all information can be released is provided to requestors. Generally, this means FOIA Division will conduct an initial review; CBP and/or the component office from which the potentially responsive records resides will review; and then FOIA Division conducts a second review. Put succinctly, each page that CBP produces will be reviewed multiple times.

19. Additionally, if a FOIA request is in litigation, an added layer of review or consultation may be needed from attorneys within CBP's OCC. After the initial and secondary review by the FOIA Division, OCC attorneys may conduct, or answer questions pertaining to, reviews for responsiveness and redactions for applicable FOIA exemptions. No attorneys in OCC are solely responsible for FOIA matters; rather, they all shoulder other responsibilities outside the FOIA context. Therefore, these attorneys are unable to devote all of their time to this level of review.

20. CBP has instituted a practice of reviewing/processing no more than 500 pages per month for FOIA requests in litigation, unless otherwise ordered. The rationale for CBP's practice of processing no more than 500 pages a month is as follows. First, the policy is based on sound FOIA business practice. FOIA demands agencies respond to more than a singular request at one time. By

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 7

making interim releases in 500 reviewed page increments, CBP regularly provides more pages to more requesters across the variety of litigation and non-litigation FOIA requests it is currently processing and avoids a system where a few, large litigations monopolize finite processing resources resulting in less pages provided to fewer requesters on a more infrequent basis.

21.   Second, processing 500 pages per month promotes both CBP and requester efficiencies. CBP processes responsive records in 500-reiewed page increments, meaning 500 pages are reviewed for release and once all protocols are run, the segregable releasable portions of these 500 pages reviewed is prepared for release, the next 500 pages are reviewed and prepared for release; and so on until all responsive pages are reviewed and released.  By working in 500-page increments, CBP has found that more pages get processed, reviewed, and released to more requesters each month.  In terms of managing workflow, the interim releases can be assigned to multiple processors if necessary and the 500-page size has shown to be optimal for reviewing officials, and other components or agencies that must be consulted before release.  Moreover, maintaining a steady interim release number of 500 pages per month is key in meeting the demands posed by the growing number, size, and complexity of the FOIA requests received by CBP.

22.   In CBP's experience, a maximum of 500 pages reviewed per month workflow size has proven optimal as it allows for a steady flow of information to the public at large.  A maximum of 500 pages processed every month enables a manageable monthly production rate because it allows for the processing of the material, review time and the release of the information to the requestor.[7]

///

---

[7] For more detail about the duties and responsibilities of the Government Information Specialist ("GIS"), Branch Chiefs, and other CBP employees involved in the FOIA process please see the First Howard Declaration paragraphs 9-11.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 8

**C. CBP's General Operations and Plaintiff's FOIA Requests**

23.     The FOIA Requests at issue in this litigation are complex FOIA requests.  Extensive effort is required to locate, search, review and redact Plaintiff's FOIA Requests.

24.     For example, CBP is a component agency of DHS and is the nation's largest federal law enforcement agency, with over 60,000 employees.  *See* www.cbp.gov/about.  CBP is entrusted with securing the nation's borders, while also facilitating lawful, legitimate trade and travel.  6 U.S.C. § 211.  CBP is comprised of three law enforcement organizational components:  the Office of Field Operations (OFO), the U.S. Border Patrol (USBP), and Air and Marine Operations (AMO).  *Id.*; *see also* https://www.cbp.gov/about/leadership-organization.  OFO is responsible for activity at ports of entry along international borders, airports and seaports.  *Id.* USBP and AMO are responsible for securing the U.S. borders between ports of entry on land and sea.  *Id.* CBP's primary function includes interdicting persons and goods illegally entering or exiting the United States.  *Id.*  For example, "CBP's Enforcement Statistics from Fiscal Year 2020" detail the number of drug seizures by OFO and USBP from Fiscal Years 2014 to 2020 , which notably includes marijuana,[8] and other enforcement activities, like Enforcement Actions (i.e. immigration related actions) from Fiscal Years 2017 to 2020.  https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics.

25.     CBP reasonably understands that Plaintiff's FOIA Requests do not seek information pertaining to the CBP's general enforcement activities related to marijuana.  Instead, CBP understands that Plaintiff only seeks documents under FOIA in connection with marijuana in specific factual circumstances, i.e., involving a jurisdiction that has legalized marijuana.  However, based on my

---

[8] OFO Marijuana Seizures: FY 2014 438,146; FY 2015 602,821; FY 2016 516,122; FY 2017 366,627; FY 2018 299,419; FY 2019 289,517; and FY 2020 324,973.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

understanding of the broad search terms that have been proposed, CBP reasonably expects that a broad electronic record search using these terms would likely result in a collection of unresponsive documents. Many of these terms are terms that CBP uses on a daily basis related to its enforcement activities and unrelated to the issue in Plaintiff's FOIA Requests.

26.     Crafting a broad electronic record search using search terms that reasonably identifies all documents related to issues involving marijuana that Plaintiff seeks, but that does not also pull in many, many more unresponsive documents has proven to be challenging. That is why, as detailed in my prior Declarations, CBP conferred with a number of custodians in different offices to seek their input regarding search terms and processes to locate potentially responsive documents in a way that was neither under or over inclusive.

**D. CBP's Resource Constraints and Workload Constraints**

27.     The FOIA Division's caseload, which was already onerous, dramatically increased in Fiscal Year 2017, and has continued to keep a similar pace to today. In Fiscal Year 2015 (October 1, 2014 to September 30, 2015), the FOIA Division received 52,290 FOIA requests. In Fiscal Year 2016 (October 1, 2015 to September 30, 2016), the FOIA Division received 66,742 FOIA requests. In Fiscal Year 2017 (October 1, 2016 to September 30, 2017), the FOIA Division received 88,840 FOIA requests. In Fiscal Year 2018 (October 1, 2017 to September 30, 2018), the FOIA Division received 87,338 FOIA requests. In Fiscal Year 2019 (October 1, 2018 to September 30, 2019), the FOIA Division received 86,133 FOIA requests. In Fiscal Year 2020 (October 1, 2019 to September 30, 2020), the FOIA Division received approximately 86,000 FOIA requests. FOIA requests have increased by almost 20,000 a year since from the end of 2016.

28.     The FOIA Division's litigation caseload has dramatically increased since 2016. For example, we have standing production orders on a significant range of topics, including but not limited

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 10

to Executive Order 13769 and Executive Order 13780, and the proposed construction of the Border Wall.

29.     Despite the large size of CBP, in the FOIA Division there are only 39 full-time CBP employees, and there are only five full-time CBP employees working in OIT's eDiscovery team. CBP is seeking ways to increase its personnel resources for the FOIA Division, but for now, these are the current staffing numbers.

30.     This surge in the amount of FOIA requests submitted to CBP has put the FOIA Division under considerable stress as its limited staff and resources struggle to keep up with the increased workload.

31.     During the COVID-19 pandemic additional constraints to process FOIA Requests have compounded. For instance, I understand that the OIT eDiscovery team are tasked to work from home. As a result, I understand that working from home for OIT eDiscovery as caused various network connectivity issues, with all remote CBP employees competing for access to the network. I understand that these constraints can cause eDiscovery searches to be slow and impacts the ability to copy and review data on CBP networks.

**E. CBP's Steps Taken Since the Court Issued Its Order**

32.     In an effort to provide Plaintiffs the records they seek and to comply with this Court's Order, Dkt. 36, CBP undertook the following steps.

33.     Initially, in the days after it was issued, I reviewed this Court's Order, Dkt. 36, and in particular, this Court's directive for CBP to conduct follow up searches. I am responsible for overseeing these FOIA searches. CBP also provided to Executive Assistant Commissioner (EAC), Office of Field Operations (OFO), at the time, Todd Owen, and his Chief of Staff a copy of the Order.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34.    On June 29, 2020, attorneys with OCC and I met with EAC Owen and his Chief of Staff to discuss the Order, and to consult with him regarding Plaintiff's FOIA Requests.[9] EAC Owen was asked to search for documents that may potentially be responsive to Plaintiff's FOIA requests among both his hard copy and electronic records. EAC Owen was advised that CBP would be conducting a separate search of his email following CBP's consultation with Plaintiff regarding search terms. In addition, EAC Owen was asked if he was aware of any documents in CBPs possession that were potentially responsive to Plaintiff's FOIA Requests, but that he did not have immediate access to.

35.    EAC Owen's subsequent actions in searching for documents available to him and responsive to Plaintiff's FOIA Requests of which I am aware are set forth in EAC Owen's Declaration, Dkt. 40.

36.    Additionally, during the June 29, 2020 meeting, EAC Owen informed those at the meeting that while he was not presently aware of any particular document, that there may be other offices and/or individuals that may have documents potentially responsive to Plaintiff's FOIA Requests. He identified the following potential sources of potentially responsive documents: within OFO, he stated the Director(s) of Seattle's Field Operations, and Admissibility and Passenger Programs (APP) located in Washington, D.C. may have potentially responsive records. Within CBP, he stated that OCC, CBP's Enterprise Services Office of Training and Development, CBP's Office of the Commissioner's Office of Policy and Planning, CBP's Office of Public Affairs, and CBP's Operational Support Office of International Affairs may have potentially responsive records.

---

[9] This declaration recounts the steps CBP took to search for documents responsive to Plaintiff's FOIA Requests and as directed by this Court, but does not go further to discuss privileged conversations or other matters.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

37.     I understand that on June 30, 2020 counsel for CBP met with Plaintiff's counsel to try and reach an agreement regarding search terms.  I understand that broad search terms were discussed, but that Plaintiff would not agree to limit any search terms and that no agreement was reached regarding search terms for an email search or otherwise regarding a search process.  Even though no agreement had been reached, FOIA Division continued with its search process as directed by the Court.

38.     On or about July 1, 2020, EAC Owen identified potential custodians within OFO's APP.  For the CBP component agencies, EAC Owen's Chief of Staff provided points of contact (POCs) for each component that FOIA Division could contact to determine which custodians within that component would be likely to have all documents potentially responsive to Plaintiff's FOIA Request.

39.     In a letter to Plaintiff dated July 8, 2020, CBP outlined the steps it intended to take in an effort to comply with the Court's Order, Dkt. 36, and to provide Plaintiff an opportunity to respond with an alternative and/or provide input.  A true and correct copy of my letter is attached was previously filed with this Court, Dkt. 43-1.

40.     This letter provided that CBP's OIT eDiscovery team intended to conduct an email search of custodians identified after speaking with EAC Owen and the contacts provided from EAC Owen and his Chief of Staff within OFO, OCC, Enterprise Services - Office of Training and Development, Office of the Commissioner – Policy, Office of Public Affairs, and Operational Support – Office of International Affairs.  The letter additionally provided that the date range of the email search would be from January 1, 2018 to September 28, 2018, and the following search terms and connectors:

          i.  Group 1: [Canada OR Canadian OR Canadien OR Legal OR Legalize OR Legalization]

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 13

AND

   ii.  Group 2: [marijuana OR mj OR marajuana OR cannabis]

AND

   iii.  Group 3: [CBI or business or industry or foreign]

      Within Groups 1, 2, and 3, CBP would conduct a second search for these terms:

   iv.  Group 4: [Inadmissible OR 212 OR admissible OR admissibility OR drug trafficker]

41.    The letter dated July, 8, 2020 reminded Plaintiff that this email search would likely result a large sum of irrelevant, nonresponsive records give the broad use of these terms among CBP documents.

42.    As set forth in EAC Owen's Declaration, Dkt. 40, I understand that on July 9, 2020, EAC Owen conducted a search for potentially responsive records, other than emails, which were to be separately searched. He located three records (7 pages) potentially responsive to Plaintiffs FOIA Request which were provided to the FOIA Division. FOIA Division reviewed these records for responsiveness, processed the records, and released 5 pages in full or in part to Plaintiff on July 16, 2020.[10]

43.    Upon review of the records, CBP identified that one of the records was dated sometime in September 2017, which fell outside the email search date range proposed by CBP in the July 8, 2020 letter. Therefore, CBP extended the date range for the email search from January 1, 2018 to September 28, 2018 to June 5, 2017 to September 28, 2018.

---

[10] *See* CBP-DWT-00001 - CBP-DWT-00005.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 14

44.	In late July, it became clear that the ongoing collection of emails and electronic documents would include many thousands of pages of documents, if not over a million, and would consequently require additional time to process under the Court's deadlines.  I understand Plaintiff was advised of this situation and that OCC tried to reach an agreement with Plaintiff's counsel to narrow the search process, and/or extend deadlines.

45.	Consequently, while that process was ongoing, to avoid delay in connection with EAC Owen's documents, CBP prioritized providing Plaintiff with EAC Owen's emails by asking EAC Owen to search his own email account.  EAC Owen was previously advised that CBP would likely conduct additional searches of his email account as a part of the larger ongoing process.

46.	As set forth in EAC Owen's Declaration, Dkt. 40, I understand that on July 29, 2020, EAC Owen searched through his own email account to identify any emails potentially responsive to Plaintiff's FOIA Request.  Within his Outlook email system, EAC Owen located 21 emails potentially responsive to Plaintiff's request.  On July 30, 2020, he provided the 21 emails (215 pages) to FOIA Division.  FOIA Division reviewed these records for responsiveness, processed the records, and released 175 pages to Plaintiff on August 10, 2020.[11]

47.	Upon review of these records, CBP determined that some of the pages determined responsive were dated in October 2018 and fell outside the date range proposed by CBP in the July 8, 2020 letter and later extended to include June 5, 2017 to September 28, 2018.  Therefore, CBP again extended the date range for the email search from June 5, 2017 to September 28, 2018 to June 5, 2017 to December 31, 2018.

---

[11] CBP-DWT-00006 - CBP-DWT-00180.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 15

48.     It is my understanding that EAC Owen separated from CBP as of August 29, 2020. CBP is preserving EAC Owen's records, including but not limited to those that are potentially responsive to Plaintiff's FOIA Requests. CBP can conduct additional searches through these documents, as needed, using search terms or another process.

49.     As the larger email collection progressed, the size of the collection continued to grow. For example, as of August 15, 2020, the OIT eDiscovery team's email collection of for the June 5, 2017 to September 28, 2018 date range revealed that using the search terms in Groups 1, 2 and 3: 48,176 emails (1,087,839 pages) were identified.  By adding the Group 4 terms and connectors to the potentially responsive emails, the results dropped to 7,718 emails (464,996 pages) of potentially responsive emails.  However, CBP anticipated that many of these emails would be unresponsive and would take significant time to process.

50.     I understand that the Parties' ultimately reached an agreement reflected in the their Joint Status Report and this Court's Order, Dkt. 41, in relevant part:

> following the Court's Order, and consultation with EAC Owen and DWT, CBP has been in the process of collecting emails and other records as a part of the email search directed by the Court. At this time, CBP has collected over a million pages of records for review.  However, because the search terms used relate to matters that CBP deals with on a daily basis, it is anticipated that the universe is over inclusive. Following a meet and confer between the parties, the parties agree that in an effort to resolve this case, resources are better spent following up on DWT's questions regarding the produced documents and discussing CBP's asserted FOIA exemptions. The parties agree that CBP does not currently need to undertake the large-scale search-term review of emails and other records that CBP has been collecting, and which currently totals over a million pages.

51.     Consequently, the larger-scale email and other record search was paused.  However, CBP's FOIA Division continues to preserve the documents collected in the event that they are needed.

52.     CBP's FOIA Division then turned its efforts to "following up on DWT's questions regarding the produced documents," to try and resolve any remaining issues in this litigation regarding

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the scope of the search.  I understand that Plaintiff sent counsel for CBP a letter dated August 25, 2020, identifying the concerns that it had with CBP's search for documents, among other issues.  *See* Dkt. 46-1.  I reviewed this letter and followed up on the search issues identified in paragraphs numbered 6-14 in Plaintiff's letter, as set forth below.  In addition, CBP's FOIA Division sent Plaintiff a letter, dated September 22, 2020 describing the steps that CBP was taking to follow up on these search issues.  A true and correct copy of that letter was previously filed with the Court.  *See* Dkt. 43-2.

53.     As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 6, FOIA Division reached out to Executive Director Todd Hoffman[12] and his Acting Chief of Staff and the Deputy Acting Chief of Staff and asked Mr. Hoffman whether he had any emails related to those described in paragraph 7 in Plaintiff's August 25, 2020 letter or otherwise related to Plaintiff's FOIA Requests.

54.     As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 7, FOIA Division identified to Plaintiff that the attachments in question were located at bates numbers CBP-DWT-00098 to 00113 and were further described as withheld in the log provided to Plaintiff.

55.     As  indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 8, FOIA Division reached out to Mr. Hoffman and his Acting Chief of Staff and the Deputy Acting Chief of Staff, and asked Mr. Hoffman whether he had any emails related to those described in paragraph 8 of Plaintiff's August 25, 2020 letter  or  otherwise  responsive  to  to  Plaintiff's  FOIA  Requests.

---

[12] Mr. Hoffman was OFO's Executive Director of Admissibility and Passenger Programs from July 2015 to August 2020.  His current position within OFO is Director, NTC Passenger.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 17

Additionally, FOIA Division reached out to OIT eDiscovery team to search for any additional responsive emails related to this email string, including attachments, if any.

56.    As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 9, FOIA Division reached out to OIT eDiscovery team to search for any additional responsive emails related to this email string, including attachments, if any.

57.    As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 10, FOIA Division identified to Plaintiff that the attachments in question were located at bates numbers CBP-DWT-00079 to 00092 and were further identified as withheld in the log provided to Plaintiff. Additionally, FOIA Division reached out to Mr. Hoffman and his Acting Chief of Staff and the Deputy Acting Chief of Staff, and asked Mr. Hoffman whether he had any emails related to those described in paragraph 8 of Plaintiff's August 25, 2020 letter or otherwise responsive to Plaintiff's FOIA Requests.

58.    As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 11, FOIA Division reached out to a meeting organizer in the conference call described in paragraph 11 and asked them to search for any responsive documents related to that call.

59.    As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 12, FOIA Division reached out to  Mr. Hoffman and his Acting Chief of Staff and the Deputy Acting Chief of Staff[13] and asked him to search for any documents responsive to Plaintiff's FOIA Requests related to the October 16, 2018 press call described in paragraph 12 of Plaintiff's letter.

---

[13] CBP's September 22, 2020 letter also included CBP would follow up with Press Secretary Corry Schiermeyer as well.  However, Press Secretary Corry Schiermeyer separated from the Agency on March 16, 2019.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 18

60.    As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 13, FOIA Division reached out to OIT eDiscovery team to search for any additional responsive emails related to the email string described in paragraph 13 of Plaintiff's letter, including attachments, if any.

61.    As indicated in the September 22, 2020 letter to Plaintiff, in response to paragraph 14, FOIA Division identified to Plaintiff that the attachments in question were located at bates numbers CBP-DWT-00063 to 00072 and were further described as withheld in the log provided to Plaintiff. Additionally, FOIA Division reached out to Mr. Hoffman and his Acting Chief of Staff and the Deputy Acting Chief of Staff, and asked Mr. Hoffman whether he had any emails related to those described in paragraph 14 of Plaintiff's August 25, 2020 letter or otherwise responsive to Plaintiff's FOIA Requests.

62.    By October 1, 2020, when CBP filed its status report with the Court, the follow up searches outlined in the September 22, 2020 letter and described above were being still in process. Dkt. 43.

63.    On October 19, 2020, I filed my Third Declaration with this Court, Dkt. 44, providing an additional update on CBP's progress on these searches, providing a clarification regarding the number of emails located during the ongoing search, and stating that CBP anticipated making its production of all responsive documents located as a result of these searches on October 23, 2020.

64.    Ultimately, as a result of these follow up searches the FOIA Division collected 1,008 emails and 690 attachments (2,450 pages). The FOIA Division reviewed these records for responsiveness and/or FOIA exemptions and determined 2,413 pages were not responsive.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 19

65. On October 23, 2020, FOIA Division produced to Plaintiff 25 pages[14] of responsive records in full or in part as a result of its follow up searches outlined in its letter dated September 22, 2020.

66. Additionally, I also re-reviewed all of the records produced in this case thus far, to see if any additional material could be segregated and released to Plaintiff. On October 23, 2020, FOIA Division re-released 35 pages, bates numbers CBP-DWT-00001-0005; CBP-DWT-00042-00061; CBP-DWT-00073-00074; CBP-DWT-00078; CBP-DWT-00093; CBP-DWT-00096-00101.

67. I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 9th day of November 2020.

_Patrick Howard_
_____

Patrick Howard
Branch Chief, FOIA Division
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security

---

[14] CBP-DWT-00181 to CBP-DWT-00205.

FOURTH DECLARATION OF PATRICK HOWARD
2:19-cv-334-RSM - 20