UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVIS WRIGHT TREMAINE LLP,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | CASE NO. C19-334 RSM<br><br>ORDER |

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion to Show Cause. Dkt. #45. Plaintiff Davis Wright Tremaine LLP ("DWT") was previously granted partial summary judgment in this Freedom of Information Act ("FOIA") case. Dkt. #36. The Court ordered Defendant United States Customs and Border Protection ("CBP") to conduct further searches for records responsive to DWT's requests. *Id.* at 16–17. DWT now argues that CBP has not complied with the Court's prior order and requests that the Court require CBP to show cause why it should not be held in contempt. Dkt. #45. CBP responds that it has complied with the Court's order and that DWT, unhappy with the results of CBP's search, is simply trying to obtain relief that is not available under FOIA. Dkt. #47. The Court does not find that CBP has violated its obligations under FOIA or the Court's prior order and denies the motion.

ORDER – 1

## II. BACKGROUND

**A. Genesis for DWT's Requests**

DWT's action relates to a purported change in CBP policy and CBP's interpretation of the Immigration and Nationality Act ("INA"). The INA prohibits admission of any foreign national who "is or has been an illicit trafficker in any controlled substance . . ., or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled" substance. 8 U.S.C. § 1182(a)(2)(C)(i). DWT maintains that after Canada legalized the recreational use of marijuana in mid-2018, CBP began denying admission to foreign nationals who had worked in legalized Canadian and American cannabis industries. Dkt. #24 at 8.[1] Still further, DWT maintains that the ban was extended to those foreign nationals "merely 'involved with the cannabis economy.'" *Id.* (citation omitted).

DWT developed its beliefs, in large part, from reported interviews with Todd Owen, CBP's Executive Assistant Commissioner for its Office of Field Operations. Mr. Owen indicated that border agents would "continue to apply long-standing U.S. federal laws and regulations that treat marijuana as a banned substance—and participants in the cannabis industry as drug traffickers—who are inadmissible into the U.S." Dkt. #25-1 at 7–11. Quoted directly, Mr. Owen explained: "If you work for the [marijuana] industry, that is grounds for inadmissibility." *Id.* (quotation marks omitted). Further, Mr. Owen explained that even those merely investing in legal cannabis companies would be deemed inadmissible: "We don't recognize that as a legal business." *Id.*

//

//

---

[1] Throughout, the Court cites to the docket and page numbers applied by the Court's CM/ECF system. Where appropriate, the Court cites to numbered paragraphs or page and line numbers.

ORDER – 2

**B. DWT's FOIA Request and Subsequent Litigation**

Believing that this represented a change in CBP policy, DWT sought records related to the policy change so that it could adequately advise its clients on the issue. Only after filing suit did DWT receive a response from CBP. After DWT found CBP's production of 13 documents totaling 116 pages insufficient, it sought summary judgment, challenging the adequacy of CBP's search and its redaction of the records. Dkt. #24. CBP likewise sought summary judgment, seeking a ruling that it had complied with its FOIA obligations to conduct a reasonable search and had properly applied FOIA's exemptions. Dkt. #28.

In resolving the motions, the Court settled on a two-step inquiry, considering first "whether the agency conducted a search that was 'reasonably calculated to uncover all relevant documents'" and then considering "whether the undisclosed information falls within one of the nine FOIA exemptions." Dkt. #36 at 10 (citations omitted). Examining the factual record in depth, the Court concluded that CBP failed to demonstrate that it had conducted a search reasonably calculated to uncover all relevant documents. *Id.* at 11–14. More specifically, the Court noted that CBP had failed to conduct a reasonable search for responsive emails and had failed to consult the one individual that had publicly discussed CBP's purported policy: Todd Owen. *Id.* at 14–16. In an effort to provide the parties with actionable guidance, the Court ordered required the following:

    a. Within fourteen (14) days of this Order, CBP shall consult with Mr. Owen regarding Plaintiff's requests. Within thirty (30) days CBP shall gather, process, and produce any responsive documents available to Mr. Owen, to the extent they are not exempt from disclosure. Within forty-five (45) days, CBP shall search for, gather, process, and produce, to the extent they are not exempt from disclosure, any responsive documents identified in discussions with Mr. Owen or in records available to Mr. Owen.

    b. Within fourteen (14) days of this Order, the parties shall meet and confer in an attempt to agree upon a reasonable search of CBP emails for records responsive to Plaintiff's requests.

ORDER – 3

      c. Within forty-five (45) days of this Order, CBP shall make a reasonable search of CBP emails for records responsive to Plaintiff's requests and shall process and produce all responsive emails and attachments to the extent they are not exempt from disclosure.

*Id.* at 16–17.

**C. Developments Since the Court's Prior Order**

Following the Court's order, the parties continued their negotiations, updated the Court on their progress, and requested additional time to resolve ongoing disputes. Dkt. #37. The Court approved of the parties' approach and excused deviations from the principal deadlines. Dkt. #38. The parties again updated the Court on the progress they had made, requesting additional time, and indicating that they had agreed that "resources are better spent following up on DWT's" questions and CBP's claimed exemptions instead of further searches. Dkt. #39. The Court again adopted the parties' stipulated approach. Dkt. #41. DWT's motion followed.

### III.   DISCUSSION

DWT's motion relies on the Court's inherent power to enforce its orders.[2] Dkt. #45 at 8 (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1996)). The violations alleged by DWT are granular and fact specific and the Court has accordingly examined the record in detail. However, for the purposes of this order the Court will attempt to focus on generalizations and groupings of records. While the generalizations and groupings may not always fit precisely, they collectively support the Court's conclusion that the motion should be denied.

//

//

---

[2] As relief, DWT requests that the Court order CBP to produce responsive records, permit the deposition of its Executive Assistant Commissioner for its Office of Field Operations, produce records for *in camera* review, and pay DWT's fees and costs. Dkt. #45 at 3.

ORDER – 4

**A. Mr. Owen's Records**

The Court ordered CBP to consult with Mr. Owen regarding DWT's requests within 14 days and produce Mr. Owen's records within 30 days. Dkt. #36 at 16–17. Mr. Owen's declaration indicates that he met with CBP attorneys, searched his hard copy and electronic records, and, other than the few records he located, was not aware of other available records. Dkt. #40 at ¶¶ 6–14. Mr. Owen further aided CBP's search by providing offices and individuals likely to have responsive records. *Id.* at ¶ 7. Mr. Owen's collected records appear to have been produced, subject to CBP's claimed exemptions. Dkts. #48-1.

DWT complains that Mr. Owen's declaration is "misleading and deficient" and that counsel of record did not consult directly with Mr. Owen. Dkt. #45 at 2, 9. But DWT does not identify the specific deficiencies that it complains of, and none are evident from the Court's review. As noted previously, affidavits in FOIA actions "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Leopold v. CIA*, 177 F. Supp. 3d 479, 485 (D.D.C. 2016) (quoting *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991)) (quotation marks omitted). The Court is unwilling to rely on speculation[3] to dispense with the presumption of good faith in this case. CBP complied with the Court's order and conducted a reasonable search for these records. Whether Mr. Owen consulted directly with CBP's counsel of record is immaterial.

**B. Mr. Owen's Emails**

A truer question relates to the gathering and production of Mr. Owen's emails. There is no dispute that CBP did not gather and produce Mr. Owen's relevant emails before the Court's

---

[3] DWT complains that Mr. Owen "was unable to locate a single document clearly stating [the] policy," strongly suggesting that "Mr. Owen was not instructed to perform an adequate search, *or* that he was mistaken in his public statements." Dkt. #45 at 10. This is speculative, especially in light of CBP's redactions.

ORDER – 5

30-day deadline. CBP explains that, from their discussions with DWT, it initially intended to search Mr. Owen's emails for responsive records at the same time it searched the emails of other identified custodians. More importantly, when CBP determined that a broader email search would be delayed beyond the Court's deadlines, Mr. Owen searched his own email and "located 21 emails potentially responsive to [DWT's] request." Dkt. #40 at ¶ 13. These records appear to have been produced, subject to CBP's claimed exemptions. Dkt. #48-2.

The Court is not persuaded by DWT's argument that CBP's production of Mr. Owen's emails violated the Court's order because it did not strictly comply with the Court's 30-day deadline. As indicated, the Court set a framework within which the parties could negotiate and seek accommodations from the Court. As discussed further below, the parties had extensive ongoing negotiations over implementation of the Court's order and entered into a stipulation extending the Court's deadlines. Dkt. #37. At that time, the now-alleged violation had already occurred, yet the stipulation made no mention of it. *Id.* More practically, DWT does not explain what harm it suffered from this technical violation and does not justify the broad relief it seeks.

**C. Records Identified from Discussions with Mr. Owen or in Mr. Owen's Records**

DWT's best argument is that CBP failed to timely "search for, gather, process, and produce, to the extent they are not exempt from disclosure, any responsive documents identified in discussions with Mr. Owen or in records available to Mr. Owen." Dkt. #36 at 17. Essentially, the Court ordered CBP to follow clear leads. The record does not indicate that Mr. Owen identified specific responsive documents in discussions with CBP. As to records referenced in Mr. Owen's records, DWT believes that it has identified specific records that have not been disclosed. Dkt. #46-1. But CBP has acted reasonably in responding to DWT's concerns in this regard, indicating that some records were withheld in full and following up on targeted searches for others. Dkt. #46-2.

ORDER – 6

DWT makes clear that it "has no confidence that the agency's late and reluctant efforts will locate all documents identified by Mr. Owen, or in documents available to him." Dkt. #45 at 11. But, as is discussed further below, these discrete issues must be considered in the broader context of the parties' actions.

**D. Email Records and CBP's Compliance**

The broadest requirement of the Court's order was for CBP to "make a reasonable search of CBP emails for records responsive to Plaintiff's requests and [to] process and produce responsive emails and attachments to the extent they are not exempt from disclosure." Dkt. #36 at 17. Prior to making the search, the Court directed the parties to "meet and confer in an attempt to agree upon a reasonable search of CBP emails." *Id.* While not the appropriate measure of CBP's search, the Court finds CBP's post-order response vastly improved and does not find that CBP violated its obligations.

Contrasted with CBP's initial search, CBP's implementation of the Court's order took a far more collaborative tenor. Ahead of their initial meet and confer, CBP shared custodians that Mr. Owen had identified as likely to have responsive emails and provided proposed search terms. *See* Dkt. #49-1. After the meet and confer that parties continued to negotiate over the scope of CBP's search and CBP ultimately integrated some of DWT's proposals while continuing to maintain its role as the agency responsible for conducting a reasonable search of its records. *See* Dkts. #46-3, #49-3; and #43-1. While carrying out the searches, CBP both responded to questions and kept DWT apprised of any adjustments that it voluntarily made where records contradicted its initial assumptions. *See e.g.* Dkt. #46-4 at 14–16 (addressing questions and notifying DWT of increased date range and need for additional time to process responsive records).

ORDER – 7

The responsive records returned by CBP's search were extensive, in part because many of the relevant search terms were matters that CBP also dealt with in different contexts. Dkt. #41. The parties accordingly discussed possible sub-searches and rolling productions in an attempt to provide DWT with quicker access to the records most responsive to its requests. However, the parties ultimately determined that "in an effort to resolve this case, resources are better spent following up on DWT's questions regarding the produced documents and discussing CBP's asserted FOIA exemptions." *Id.*

DWT complains that CBP's search process was artificially inflated in an effort to bog down CBP's production of responsive records. Dkt. #50 at 3; Dkt. #46-4 at 4–5. But DWT does not provide any proof and the Court, relieved from the fog of war, does not view CBP's search as such. Rather, the record shows that CBP collaborated with DWT, performed a reasonable search that broadly captured potentially responsive records, and sought to agree on methods to better identify subsets of the records DWT sought. But DWT became increasingly suspicious of CBP's actions. Rather than collaborate with CBP on more targeted searches of the potentially responsive records or prioritizing certain custodians, DWT agreed to delay further searches in order to address other issues.

All this is not to indicate that DWT's complaints are baseless.[4] DWT makes clear that it has real questions as to the origins of CBP's approach to Canada's legalization of cannabis and CBP's interpretation of the INA:

> In the summer of 2018, Mr. Owen repeatedly spoke publicly about CBP's "drug trafficker" policy. CBP has produced documents indicating officials had numerous internal discussions about that policy, generated public-facing talking points about the policy, and created training materials to help front-line CBP

---

[4] The Court is mindful, however, that an element of strategy lies behind DWT's motions and arguments. DWT has aptly utilized its limited leverage to seek the information it desires.

ORDER – 8

   agents understand and implement the policy. . . . But CBP still has not produced a single document stating the policy.

Dkt. #45 at 10 (citations omitted). DWT maintains that "[e]ither CBP is withholding the agency's policy interpretation of the INA or the agency has implemented a significant interpretation of the law it enforces without following any clear process . . . [or] creating any written record of the agency's action." *Id.* at 10–11. DWT's mistrust also resulted from CBP's initial paltry productions of Mr. Owen's records[5] which gave DWT "no confidence that the agency's late and reluctant efforts will locate all documents identified by Mr. Owen, or in documents available to him." *Id.* at 11. All this has resulted in DWT being left without answers to its simple questions.

  But the Court's prior order was mindful that it was not in the best position to craft and oversee CBP's search so that the responsive records DWT sought were identified and produced. CBP is the entity tasked with crafting a reasonable search. The Court is comfortable that CBP has done so here. Of note, CBP points out that "[t]he goal posts keep moving." Dkt. #47 at 3. While CBP has remained responsive to DWT's questions and responses, it has been led to the conclusion that "DWT appears to be using search negotiations to try and obtain more than a reasonable search process." *Id.* at 3–4. In substance, DWT wants answers to questions. Perhaps the lack of answers is itself the answer, or perhaps, as DWT considers, the answers lie beneath CBP's redactions of the documents it has produced.

//

//

---

[5] CBP's initial production of Mr. Owen's electronic records was effectively two documents totaling five pages. Dkt. #48-1. With regard to Mr. Owen's emails, CBP identified 78 pages of email and 137 pages of attachments and ultimately released portions of 130 pages of records. Dkt. #48-2. Following these productions, DWT was forced to identify additional records referenced in Mr. Owen's records, at least some of which CBP had not sought out.

ORDER – 9

**E. The Path Forward**

From the foregoing, the Court concludes that DWT's motion should be denied, and this case should proceed to consideration of CBP's claimed exemptions. As DWT notes, "[t]he redacted documents may reveal the Policy, and therefore substantially reduce or even eliminate the need for further productions." Dkt. #45 at 12. CBP substantially agrees that the Court should proceed to considering the claimed exemptions. Dkt. #47 at 13. But the Court finds DWT's request that the Court order *in camera* review to be premature and requests further briefing on the issue of CBP's claimed exemptions. The Court, however, leaves it to the parties—jointly or individually—to determine the manner in which their continuing disputes over exemptions are best presented to the Court.

### IV.     CONCLUSION

Accordingly, and having reviewed DWT's motion, the briefing of the parties, evidence submitted in support, and the remainder of the record finds and ORDERS that Plaintiff's Motion to Show Cause (Dkt. #45) is DENIED.

DATED this 27th day of July, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE